21889.  ROYAL INDEMNITY COMPANY *et al. v.* LAND.

DECIDED JUNE 14, 1932.

*Sidney Smith, James N. Frazer,* for plaintiffs in error.

*J. D. Tindall, Carl N. Davie, J. F. Kemp, L. S. Camp,* contra.

LUKE, J.   Fred Land was injured on December 6, 1930, while in the employ of The Cotton Insurance Association.   The record discloses that, while standing on a ladder and removing a book weighing about 75 pounds, his back was wrenched and he complained of a pain between his shoulder blades, which pain caused him to assume a semi-stooped position.   The next day he went to an osteopath for treatment, and then tried to work for a few days, but soon had to discontinue work.   Dr. Hal Miller, who was engaged by the employer, diagnosed Land's ailment as "traumatic neurosis," which, as we understand, is a nervous condition arising from an injury.   After the employer's physician diagnosed Land's condition as being caused by a wound or injury, the employer, The Cotton Insurance Association, agreed to and did pay Land $14.42 a week for 4 weeks.   Dr. Miller began treating Land on December 19th, had him moved to St. Joseph's Hospital, where he continued under treatment of Dr. Miller until January 12th, at which time Dr. Miller stated that he had done all he could for Land, and he was carried back home and his physician Dr. Garrett was called.   Dr. Garrett suggested calling Dr. Dowman, a brain specialist, and Land was carried to Piedmont Hospital, where Dr. Dowman operated on him for brain tumor about January 15th, removing a large portion of a tumor.   The tumor grew back and Land died about three weeks after the operation.   After it was disclosed that Land had a tumor the employer ceased to pay him compensation, and after the death of Land his widow, Mrs. Louise Land, prosecuted her case before the industrial commission, and Commissioner Whitaker awarded compensation.   The case was appealed to the superior

court, and the award of the industrial commission was sustained, and The Cotton Insurance Association, employer, and Royal Indemnity Company, insurance carrier, brought the case to this court for review.

The contention of the plaintiffs in error is that the deceased died of brain tumor and that the injury received by the employee was not the cause of his death. Mrs. Land, defendant in error, contends, in substance, that the injury sustained by her husband while in the employ of The Cotton Insurance Association was the cause of his death in that the injury either created or developed and aggravated the tumor, which was a rapidly growing malignant tumor such as often results from an injury. In 2 Schneider's Workmen's Compensation Law (2d ed.), 1831, 1832, § 523, numerous cases from various states are cited in support of the statement that "Where evidence shows that an injury so weakened deceased's power of resistance as to subject him to disease, and that disease did result, causing death, it was held that the death was due to the injury arising out of the employment." In the same connection (p. 1831) we find mention of a case in which it was held that even though the deceased died of an obstruction of the bowels, the death was due to an injury to his foot which so deranged his system as to cause the bowel obstruction. It is further stated that "To prove that the death was accidental, it is not necessary to negative every other possibility, *nor need the proof be direct and positive*" (italics ours). Whether the wrenched and sprained back or the tumor caused the death in this case is not a question of law but is a question of fact; and the finding of the industrial commission on questions of fact is final and conclusive if supported by any evidence. The undisputed evidence shows that the deceased sustained an injury while in the employ of The Cotton Insurance Association; that he was in apparently good health prior to such injury; and that he had a tumor of the brain after such injury. And there was also evidence from which the commissioner could find that the rapidly growing tumor was either created or developed and aggravated by the injury. The evidence of Dr. Dowman, a brain specialist and expert, was in part as follows: "The history that I obtained was that on December 5th or 6th, 1930, the patient was removing some books weighing probably 75 pounds. At this time his back was wrenched and he had pain appearing between the shoulder blades. . . My ex-

amination [on January 14] led me to feel that he had a rapidly growing tumor of the brain, . . So he was operated upon, . . and a very rapidly, very malignant tumor of the brain was disclosed, and a very large quantity of the malignant tumor was removed. . . The tumor continued to grow very rapidly. As a matter of fact it was the most rapidly growing tumor I have ever seen, and he died approximately three weeks later. . . It is generally recognized, I think, that any pre-existing condition, the symptoms might be brought to the fore by an injury. . . A recent article of Dr. Cushing, who is really an authority on this question, discusses that point in regard to a trauma as having an influence in the development of brain tumor, in which he makes the statement that it can't be proved that it does not, because there is no question that practically every case of brain tumor you see has a history of trauma. . . There is a feeling with people who deal with this particular type of condition that trauma may have influence in regard to, if not the actual production or start of it. . . During the terrific strain you do have a perfectly tremendous engorgement of the vessels of the brain. . . As to whether during the strain of this back injury with the cerebral congestion that came from it, a small, slowly growing tumor was suddenly thrown to become a rapidly growing tumor, I could not say that that didn't happen. . . As a matter of fact from this tumor that that boy had and the way it grew I don't think that that tumor could have existed much longer than from the time of the injury. . . From the nature of the tumor *I know it could not have been there very long* (italics ours.) It is a well recognized fact that trauma and cerebral congestion and the like sometimes bring to the fore symptoms of these pre-existing conditions. . . In my experience it was the most rapidly growing that I have ever seen. . . In three weeks from the day I operated on him and took out the great bulk of the tumor, it had grown to three times its size and gone across to the opposite side of the brain. . . I know that a pre-existing condition might be made very definitely worse by trauma. . . Here is a boy who is perfectly well as far as I can tell and he has a trauma, and one week after his trauma he develops the symptoms of a rapidly growing tumor of the brain." Mrs. Land, wife of the deceased, testified that prior to the trauma or injury the deceased "was in perfect health," and had never lost any time from his work

"until he had that strain." Dr. Garrett, his family physician, also testified that the deceased was in good health up to the date of the injury. Industrial Commissioner Whitaker held that "the presumption in favor of the dependents of the deceased employee that he died from said injuries has not been overcome by the employer. . . The burden should rest upon said employers and their insurance carrier to show that an intervening cause was the cause of his death, and not the injury;" and he found, "as a matter of *fact* (italics ours), that the injury received by the deceased employee was an accident arising out of and in the course of his employment, and said injury was the proximate cause of his death." An examination of the record in the case of *U. S. Fidelity & Guaranty Co.* v. *Robinson, 42 Ga. App.* 177, discloses that the deceased sustained a trauma; that the defendant contended that the deceased died of acute indigestion in no way resulting from the injury; and that the doctors, from holding an autopsy after the deceased had been embalmed, found no evidence of death as a result of the trauma; and yet the commissioner, whose award in that case was affirmed, found, in part, as follows: "In the instant case there was an accident which was followed by a serious disability. Due notice was given to the employer and medical treatment was provided. The decedent remained under constant observation and treatment of the employer's physician from March 22, 1929, up to and including April 10, during which time he was confined to his bed, totally disabled, and complained of severe pains. The attending physician furnished by the employer on April 10 placed him in a hospital and ceased to visit him or treat him for his disability. About twelve days later the injured employee died without ever being able to leave his bed. . . The evidence and circumstances in this case clearly show that the injured employee was in pain from the day he reported to Dr. Corson, and that he continued to suffer until the date of his death, which was practically a month after his injury. It is reasonable, therefore, to presume that the injury sustained was the proximate cause of the death, in the absence of definite proof to the contrary. The burden of proof would be on the employer and the insurance carrier, under the circumstances present in this case, to show that some intervening agency and not the injury was the cause of the death." In the case sub judice the deceased was injured, was treated by a physician furnished by the

employer whose diagnosis was "Strained ligaments at the angle of the left scapula. Now has traumatic neurosis;" he was sent to a hospital; he suffered pain from the day he was injured until the day he died; no witness testified that the tumor was not caused by the injury; and there was admittedly expert testimony which strongly indicated that the tumor was the result of the injury. Claimant having proved the injury and subsequent pain, disability and death, and that the deceased's pain began the day he was injured and lasted until he died, the burden was upon the employer and insurance carrier, under the particular facts of this case, to prove as a matter of affirmative defense, that some intervening or pre-existing agency was the cause of his death, rather than the injury which was proved by the plaintiff.

The judge of the superior court properly affirmed the award of the industrial commission.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*