## SCOTT v. LIBERTY MUT. INS. CO.
### No. 9650.

Court of Civil Appeals of Texas. Austin.
June 25, 1947.

Rehearing Denied July 9, 1947.

Louis Scott Wilkerson, of Austin, for appellant.

Hart & Brown, by James P. Hart. all of Austin, for appellee.

BAUGH, Justice.

This is a workman's compensation suit brought by the injured employee for the loss of his right eye. Trial was to a jury, but at the close of the testimony, upon appellee's motion, the trial court instructed a verdict for the defendant and rendered a take nothing judgment; hence this appeal.

The only question presented is whether there was any evidence of causal connec-

tion between the accident involved and the subsequent loss by appellant of his right eye.

Only three witnesses testified—the appellant and the two doctors who treated him. The material facts, without substantial dispute, are: On March 27, 1944, Charley Scott was employed at the Magnesium plant a few miles northwest of Austin. On that date, while working on a truck hauling chemical cans in a high wind, "something blowed in my eye" which "burned just like fire and kept on burning." He was given first aid treatment at the plant for about ten days and then sent to Dr. Sam Key, an eye specialist, who began treating him on April 11, 1944, and finally discharged h'm on May 17, 1944. Dr. Key's testimony, not contradicted, was that when Charley first came to him he had a fleshy growth, nonmalignant, of common occurrence, known to the profession as a pterygium, which encroached on the cornea or clear part of the eye. This growth had developed gradually over several years, in Dr. Key's opinion. Charley was then suffering from general irritation or inflammation over his entire right eye, designated as conjunctivitis. Dr. Key treated this latter condition, which, according to his testimony, had by May, 17, 1944, cleared up and the eye had returned to normal, except for the pterygium which remained.

Meantime the Magnesium plant had closed down and Charley worked at Bergstrom Field as a porter for 4 or 5 months; then went to the shipyards in California for about 9 months, returning to Austin in February, 1946. He then went to Dr. Miears, who found "a very unusual looking tumor across the front of the eye." A portion of this tumor was removed, tested and found to be cancerous, and "because it was a fairly early cancer" Dr. Miears removed Charley's right eye to save his life.

Appellant, between the date of the accident on March 27, 1944, and the removal of his eye in February or March, 1946, had never been examined, nor treated by any other physician than Drs. Key and Miears. His testimony as to the condition of his eye during this interval was as follows:

"Q. During that period of time how did your eye feel, your right eye? A. It felt like something was in it all of the time.

"Q. Well, did it burn any more? A. No, it never did burn any more. It just felt like something was in it.

"Q. When you say, 'felt like something was in it'; can you tell us a little more? A. Well, it just felt like something was in it, kept me working at it all of the time, trying to get it out. The thing was growing on my eye, and it made it feel like something was in it."

Dr. Key's testimony to the effect that the pterygium which he found in Charley's eye on April 11, 1944, was not then malignant is not disputed. Charley stated that prior to the accident, he had never had any trouble with his eye. Both of the doctors testified that in their opinion the accident of March 27, 1944, and the resultant inflammation or irritation then caused by it, had nothing to do with the cancerous condition found to exist approximately two years later. Both physicians also testified that the cause of cancer is not scientifically known; that one theory of causation is that where a non-malignant tumor exists a continuous or chronic irritation thereof might cause it to become malignant or cancerous. That is, one theory of causation is that chronic irritation has an accessory or predisposing influence in causing a non-malignant tumor to become malignant.

Appellant contends that the jury was not conclusively bound by the expert opinions of the doctors. That since the cause of cancer is not known, said doctors' testimony that it was possible for chronic irritation over a prolonged period of time of a non-malignant growth to make it malignant, when taken with appellant's testimony that continuously after the accident of March 27, 1944, his eye felt like it had something in it and he kept trying to get it out, the jury could have concluded that said accident was a contributing cause of the cancerous condition found to exist nearly two years thereafter.

The cases involving the Workmen's Compensation Law, Vernon's Ann.

Civ.St. Arts. 8306–8309, are legion. Almost every conceivable state of facts cognizable under said Law has arisen. The difficulties encountered are in applying now well settled rules of law to the fact situations presented. Under Art. 8307, Sec. 5, Vernon's Ann.Civ.St., the burden of proof to show a compensable injury is upon the claimant. And under Art. 8309, a compensable injury includes not only damages or harm to the physical structure of the body but "such diseases or infection as naturally result therefrom."

It is admitted that the accident of March 27, 1944, occurred in the course of appellant's employment and caused the irritation or inflammation in his eye for which he was treated by Dr. Key. The testimony of Dr. Key that such condition was acute and not chronic, and that the inflammation disappeared and the eye was normal, except for the pterygium, when appellant was discharged, is not controverted. Appellant himself, while testifying that the growth remained and made his eye feel like it had something in it, admitted that the irritation had ceased. There was no evidence that the pterygium was cancerous when he was discharged by Dr. Key in May, 1944. The testimony is to the contrary. It is true that an injury may be compensable, even though aggravated by an existing disease, or by a disease occurring after the injury. Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356, 357; Indemnity Ins. Co. v. Godsey, Tex.Civ.App., 143 S.W.2d 639, 642. But there must be proven a causal connection between the accident and the ultimate death or disability. And this connection must appear from facts proven from which such connection may be reasonably inferred. The mere possibility that such causal connection exists is not sufficient. The rule stated in 32 C.J.S., Evidence, § 1044, p. 1131, is:

"An inference can be drawn only from the facts in evidence, and cannot be based on surmise, speculation, conjecture, or guess; it must be reasonably drawn from, and supported by, the facts on which it purports to rest, and must be made in accordance with correct and common modes of reasoning. An inference has

been required to be based on probabilities, and not on mere possibility or possibilities; but according to other authorities, probabilities, as distinguished from facts proved, will not support an inference."

See also Federal Underwriters Exchange v. Edwards, Tex.Civ.App., 146 S.W.2d 461, 463.

The rule is now settled that a jury is not bound by the opinions of experts elicited through hypothetical questions, where the jury itself can, in the light of their own common experience and the other evidence, reasonably reach a different conclusion. Maryland Cas. Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, 64; Traders & General Ins. Co. v. Turner, Tex. Civ.App., 149 S.W.2d 593. But there are certain scientific fields wherein the average juror or layman does not possess the knowledge or information from which to draw his own conclusions; and must be guided by the opinions of experts who have acquired scientific information on the subject. Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943, 945; Lumbermen's Mutual Cas. Co. v. Vaughn, Tex. Civ.App., 174 S.W.2d 1001. The cause, diagnosis and treatment of diseases usually come within this category. Nor were the opinions of Drs. Key and Miears, both appellant's witnesses, that neither the accident nor the resulting inflammation caused or contributed to the cancerous condition discovered some two years afterwards, contradicted by actual facts, physical laws or common knowledge available to the jurors, upon which they might find to the contrary. The opinions of said witnesses were not based merely upon hypothetical questions predicated upon assumed facts; but largely or entirely upon facts known to them, acquired through treatment of appellant.

The only hypothesis on which appellant relies as evidence of cause and effect is that chronic irritation of a tumor may develop into a cancer; and that the jury could have inferred, from Charley's testimony, that such chronic and continuous irritation did exist in his eye after the accident. Not only was Dr. Key's testimony positive to the contrary; but appel-

lant himself admitted that after treatment by Dr. Key the irritation ceased.

In brief, and without discussing or attempting to differentiate the many cases cited by both appellant and appellee, and taking appellant's evidence in its most favorable light, he proved nothing more than that an accident occurred to his eye in March, 1944, which irritated and inflamed it at the time; that such inflammation was acute and disappeared as the result of treatment; that the growth on his eye was not then malignant; that in February, 1946, same was malignant; and that the accident might possibly have been a contributing cause. Not only is such possibility contradicted by the expert opinions of his own doctors, but in the absence of further evidence, does not, under the decisions, constitute any competent evidence of causal connection between the accident and the injury. The judgment of the trial court is affirmed.

Affirmed.