Ezekiel C. ROBINSON, Appellant,

v.

ARGONAUT INSURANCE COMPANY, Appellee.

No. 17697.

Court of Civil Appeals of Texas, Fort Worth.

March 5, 1976.

Rehearing Denied April 9, 1976.

Dushman, Greenspan, Kensel & Friedman and Lowell E. Dushman and N. Michael Kensel, Fort Worth, for appellant.

Anderson, Henley, Shields, Bradford, Pritchard & Miller and C. A. Searcy Miller, Dallas, for appellee.

## OPINION

SPURLOCK, Justice.

This is an appeal from a judgment rendered in a workmen's compensation case tried to a jury. The appeal is predicated upon the claimed error of the trial court in excluding testimony of a doctor concerning his prognosis because same was not based upon reasonable medical probability.

We reverse and remand.

The appellant will be referred to as plaintiff and the appellee will be referred to as defendant.

On August 15, 1972, the plaintiff, while in his employer's plant, sustained an accidental injury. His employer, American Manufacturing Company of Texas, was in the business of manufacturing bomb casings. Plaintiff was a shot blast operator and was working upon a steel floor. The metal gun he was using came in contact with an electrical relay resulting in 440 volts of electricity coursing through his right hand, arm, body and feet and then into the steel floor. He suffered second degree burns on the palm of his right hand, right forearm, dorsal portion, and on one of his feet. He was thrown backward, landing on the steel floor in a sitting position and was rendered unconscious. He was given artificial respiration at the scene and removed to a local hospital by ambulance where he was seen by Dr. Thomas, his employer's doctor. In the hospital his chest, ribs and heart were X-rayed. His ribs, chest, heart and lungs appeared clear and there was no evidence of rib fracture. The EKG was normal. His burns were dressed and he was observed until the following day when he was discharged from the hospital. He was later referred by his employer's doctor to a neurosurgeon and an orthopedic doctor for examination. The neurosurgeon found on the date of his examination plaintiff had no objective evidence of injury except the healing electrical burns. The orthopedic surgeon did not testify. His employer's doctor released him for work on December 7, 1972. His employer's doctor had treated plaintiff almost daily from the date of accident until December 7, 1972. He worked one-half day and testified that he could not do the work and returned to Dr. Thomas who treated him until December 15, 1972. He then saw another orthopedic doctor who has since moved out of this state. He then saw Dr. Raymond J. West, an orthopedic surgeon, who was treating him at the time this doctor's deposition was taken. His employer's doctor testified at the time of trial that plaintiff had recovered from his injuries. He further testified that he had treated plaintiff for pain in his back by giving him diathermy treatments. He testified he had given plaintiff a pre-employment physical examination immediately before he was employed in his present employment and at that time he was physically fit to do hard labor.

Dr. West, plaintiff's only medical expert, testified by way of deposition that he started treating the plaintiff on February 21, 1973; plaintiff gave a history of having fallen in a sitting position; he was having pain in his low back; and he was a large person, 6′ 3″ in height and weighed 240 pounds. A physical examination revealed he had tenderness in his low back, restricted motion in his hips, the straight leg raising

test put pressure on the nerve in his low back and, although a doctor can normally raise a person's leg in an extended position to about 90 degrees, the plaintiff's straight leg raising test showed he could raise his leg to only 30 degrees; X-rays revealed there was a narrowed disc space at the level of lumbar 5-sacrum 1. He diagnosed his condition as a sprained back caused by the fall. He was referred to Dr. Hoover at St. Paul's Hospital in Dallas who did an electromyogram. The interpretation of this electromyogram was excluded from evidence upon objection of the defendant. Dr. West further testified that plaintiff suffered from nerve root irritation and in his opinion had a pinched nerve. The doctor advised plaintiff to spend most of his time in bed. He also testified that "probably" he had a nerve root irritation. Plaintiff testified that he was suffering pain. There is evidence that a pinched nerve can cause pain and disability.

The bill of exceptions reflects the following testimony of Dr. West which was excluded:

" 'QUESTION: Assuming that Mr. Robinson at this time is still having difficulty and is still troubled with pain, could you tell me as to whether or not you have an opinion on the *likelihood* of how much longer he could expect something like this to go on? (Emphasis ours.)

" 'ANSWER: If I knew that he still had pain as of this date, this being a year and a half later, I would assume that he will continue to have problems with his back *on a permanent basis.* (Emphasis ours.)

" 'QUESTION: Now, earlier I had asked you on direct examination, that assuming that he was still complaining of pain in his low back area and his condition was still essentially of that nature, I asked you to give an opinion based on whether or not you at this time would have an opinion as to whether or not it was permanent, and then I related to this time, did we understand that I meant as of January 17, 1975, the time of the taking of this deposition?

" 'ANSWER: Yes.' "

Later in his testimony Dr. West testified that in reasonable medical probability the injury in question caused plaintiff to have a pinched nerve condition. He further testified that assuming he was still having pain he would not recommend that he do work requiring bending, stooping and lifting or other work of a workman's type labor.

Dr. West was then asked the following question and gave the following answer:

"QUESTION: Doctor, have your opinions you have stated today and what we have been discussing, have they been based upon reasonable medical probability?

"ANSWER: Yes."

At this juncture of the trial, immediately following the above question and answer, plaintiff's counsel then retendered the excluded testimony quoted earlier. The court stated in connection therewith that he would sustain his prior ruling, which was one of exclusion, because the doctor's testimony was not based upon reasonable medical probability.

The excluded testimony to the effect that plaintiff's condition was permanent is the only direct testimony offered that plaintiff's disability is of a permanent nature. The jury then had no testimony before it concerning the duration of the disability except the testimony of the two doctors who testified on behalf of the defendant. The jury disregarded the testimony of the neurosurgeon and then found the disability terminated on the date Dr. Thomas testified that he released the plaintiff to return to work.

The only contested issue in this case was the extent and duration of the disability. This issue was sharply contested.

The jury, in response to special issues, found: the injury of August 15, 1972, was a producing cause of plaintiff's total disability which began on the date of the accident, August 15, 1972, and continued until December 7, 1972. It was followed by partial incapacity that began on December 8, 1972, and ended April 30, 1973. The jury then found that his average weekly earning capacity during his period of partial temporary incapacity was $80.00 per week. It was uncontroverted that his average wage per week prior to the accident was $107.54. The judgment was rendered in accordance therewith for plaintiff in the sum of $1,137.90 less $931.00 which he had theretofore been paid, leaving a net judgment of $206.90.

Plaintiff assigned only one point of error, that being the action of the trial court in excluding the testimony of Dr. West concerning his opinion that plaintiff's injury was of a permanent nature.

In connection with the first question and answer excluded, the doctor was asked his opinion on the *likelihood* of the permanency of plaintiff's injuries. The word "probability" was not used. The words "likelihood" and "probability" are synonymous. See: Webster's New World Dictionary of the American Language, 1972 Ed., Enlarged; Webster's New Third International Dictionary, Unabridged, 1964 Ed.; and Webster's New Collegiate Dictionary, 1975 Ed.

The admissibility of and weight to be given expert medical testimony in Texas is discussed in "Expert Medical Testimony in Texas", by Zollie Steakley, Associate Justice of the Supreme Court of Texas, Vol. 1, St. Mary's Law Journal, page 161 (1969). This author divides the decided cases concerning this question into three categories and discusses the applicable law under each. These categories are: "Future Consequences of Present Injuries", "Causation", and "Medical Professional Liability Cases". Ordinarily, different rules apply to cases in these separate categories. Justice Steakley then analyzes four cases: *Insurance Company of North America v. Myers*, 411 S.W.2d 710 (Tex.Sup., 1966); *Otis Elevator Company v. Wood*, 436 S.W.2d 324 (Tex. Sup., 1968); *Parker v. Employers Mutual Liability Ins. Co. of Wis.*, 440 S.W.2d 43 (Tex.Sup., 1969); and *Insurance Company of North America v. Kneten*, 440 S.W.2d 52 (Tex.Sup., 1969). Within four months of the *Wood* decision the Supreme Court delivered its opinions in the *Parker* and *Kneten* cases, mentioned above. Each of these cases involve causation as distinguished from future consequences of present injuries. The *Myers* case involves the question of whether a traumatic injury aggravated a pre-existing malignant brain tumor which was a "producing cause" of death. The *Wood* case involves an escalator accident and the question involved was whether or not the escalator accident could have caused claimant's heart attack. The question involved in the *Parker* case was that although the cause of cancer is unknown it is possible that prolonged exposure to radiation could cause cancer.

In *Insurance Company of North America v. Kneten*, supra, the Supreme Court had before it a workman's compensation case. The issue here was whether or not an electric shock received by the employee caused damage to his heart, resulting in total and permanent disability. Dr. Sloan was the only medical witness who testified. He testified that Kneten was predisposed to a heart attack and prior to his alleged accident he was suffering from hardening of the arteries of his heart. When he was asked his opinion as to whether the occurrence had precipitated the heart attack the doctor replied that "he could not say without medical doubt, it was a 'strong possibility'." The doctor "Pointing out that he did not know the nature of the electric shock received by his patient, he said that the shock 'could have' been a contributing factor." On cross-examination the doctor was asked if he could put his finger on the cause

of the attack and he replied: " 'I can't say that did have, and I certainly can't say it didn't have something to do with it.' " He said, " 'I think that the chronological events that have happened makes it a strong possibility that this could help precipitate a heart attack.' " He was asked if he could say if the heart attack was medically probable, to which he replied, " 'Well, circumstantially, I would say, yes, strong possibility.' "

In passing upon the sufficiency of this testimony the Supreme Court stated: "While the doctor's testimony was not as responsive and explicit as it could have been, he has said nothing to rule out a medical relation between the work occurrence and the attack, nor has he negated the reasonableness of the finding of causal connection. We think the jury was entitled to conclude as to the probability based upon all of the evidence in the case."

The following analysis of these cases appears at page 169 of St. Mary's Law Journal, supra: "If *Myers, Wood, Parker* and *Kneten* are considered together, it is evident that in certain areas expert medical testimony in terms of reasonable medical probability is required for submission to the jury of issues on causation. *Parker* and *Myers* are illustrative of this type of case. *Myers* presented questions of the aggravation of a pre-existing cancer, and the answers to these questions were clearly not in the realm of general knowledge. In *Parker* the causation question turned upon the effects of radiation upon human cells, another question beyond the layman's knowledge and experience. There are questions other than cancer causation and aggravation requiring expert medical testimony for their resolution; however, since cancer is one of the leading causes of death in the United States, the solution of causation questions in these cases will continue to be a vexatious problem for the courts.

"*Kneten,* on the other hand, illustrates a type of case where the nature of the physi-

cal damage and the sequence of events supplies a proper basis for a reasonable jury inference on causation, notwithstanding the expert medical witness may be said to have testified only *in terms of possibility.* It was emphasized in the opinion that the medical testimony was not inconsistent with the strong circumstantial evidence supporting the plaintiff's causation theory." (Emphasis ours.)

In the case before us the defendant relies upon the *Myers* and *Wood* cases. It is our opinion that the decisions in those two cases are not controlling of the facts before us.

In some of the professional liability cases the facts are such that they are analogous to the cases involving cancer and radiation. Under the facts in most of those cases expert testimony stated in a positive manner is required to sustain a verdict or to even be admissible.

An analysis of the cases involving cancer, the effects of radiation, and some professional liability cases require positive expert medical testimony to sustain a verdict.

In *Texas Employers Insurance Association v. Dimsdle,* 440 S.W.2d 359 (Texas Civ. App., Dallas, 1969, ref., n. r. e.) that court stated the rule is that ". . . permanency of disability in a workmen's compensation case may be established by lay testimony or by circumstances alone, without expert medical opinion testimony." That court then cites as its authority for this statement 63 Tex.Jur.2d, Sec. 429, page 455, and 14 cases.

In 63 Tex.Jur.2d, "Workmen's Compensation", Sec. 429, page 455, "As to extent and duration of disability", (Rev.1965), the rule is stated as follows: "The duration and extent of disability resulting from an injury is at best an estimate that must be determined by a jury from all the pertinent facts

before it. The issue as to disability may be established by the claimant alone, even though his testimony may be contradicted by medical witnesses."

In the *Myers* case, supra, the Supreme Court stated: "We note as not controlling here those decisions in workmen's compensation cases in medical situations not involving the highly uncertain medical problem of the nature, origin and aggravation of cancer. (Cases cited.)"

In *Insurance Company of North America v. Parker,* 434 S.W.2d 159 (Texas Civ.App., Tyler, 1968, no writ hist.) that court stated: "It is now well established in this state that 'reasonable probability' is determined by a consideration of 'the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase.' *Insurance Company of North America v. Myers,* 411 S.W.2d 710 (Tex.Sup., 1966); *Otis Elevator Company v. Wood,* 436 S.W.2d 324 (Tex.Sup.1968)."

■ In *Western Casualty and Surety Company v. Gonzales,* 518 S.W.2d 524 (Tex. Sup., 1975) that court stated the correct principle of law that we should here apply. That court stated: "The form of that expert testimony is not so important as its substance. Certainly a doctor is not required to use the usual expression that there is a 'reasonable probability' of causal connection between original injury and present physical condition. *Otis Elevator Company v. Wood,* 436 S.W.2d 324 (Tex. 1968); Steakley, Expert Medical Testimony in Texas, 1 St. Mary's L.J. 161 (1969). . . It is when he is uncertain, or does no more than acknowledge that everything is possible, that a gap in the proof may be closed only by the doctor deciding that the chances weigh more heavily in favor of the causal

relation." See also *Atkinson v. United States Fidelity & Guaranty Co.,* 235 S.W.2d 509 (Texas Civ.App., San Antonio, 1950, ref., n. r. e.).

The parties in their respective briefs rely upon cases involving causation where the rule is as stated above.

■ The excluded testimony here concerns future consequences of present injuries.

In St. Mary's Law Journal, supra, Justice Steakley states that the case of *Port Terminal Railroad Association v. Ross,* 155 Tex. 447, 289 S.W.2d 220 (1956), clarifies the nature of expert testimony required for jury consideration of the future consequences of an injury. In that case the court had before it a no-evidence point concerning whether or not claimant had showed a probable and determinable future course of plaintiff's neurosis. It was claimed that the trial court erred in including future damages as a permissible element in the verdict. In that case the doctor testified on the question of permanency in terms of " 'I think not' ", " 'I think he will not return to work' ", " 'It happens frequently' ", " 'I don't believe he will get well' ", " 'he might be able to go back doing the heavy work he did before' ", and " 'I don't think he will' ". He further said " 'I haven't said he was permanently incapacitated, because I don't know'."

It was further stated in the *Ross* case: "Since there is evidence of probative force to support a jury finding that it is a reasonable probability that plaintiff will not recover from the mental illness, the trial court did not err in permitting the jury to consider the future consequences of the injury."

Justice Steakley, in St. Mary's Law Journal, supra, in commenting upon this case states that the reasonable certainty rule

which prevails in some jurisdictions is not recognized in Texas.

The defendant contends that the exclusion of testimony here involved was harmless error. It is our opinion that the error complained of amounted to such a denial of the rights of the plaintiff as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case.

This point of error is sustained. Rule 434, T.R.C.P.

Judgment is reversed and cause remanded.