St. Louis, Iron Mountain & Southern Railway Company v.
T. B. Boshear.

No. 1865.   Decided November 4, 1908.

1.—Carrier—Contract.to Furnish Cars—Agency—Authority.

Evidence in an action for damages on contract by the traveling freight agent of a railway to furnish cars at a station on another line of road for shipment of cattle thence and over such agent's line, considered and held sufficient to, support the conclusion that the contract was made, was within the agent's authority and was ratified by his principal.   (Pp. 77, 78.) '

2.—Same—Case Distinguished.

The ruling in Gulf, C. & S. F. Ry. Co. v. Jackson & Edwards, 99 Texas, 343, as to the implied authority of a traveling freight agent to contract for a railway company, distinguished.   (P. 78.)

3.—Same—Ratification.

The furnishing by defendant of cars for shipment of cattle at a station on another company's road, in pursuance of a contract so to do by defendant's traveling agent, presents evidence of knowledge and ratification of his undertaking which would not arise if the shipment was from a station on defendant's own line, where the law required it to furnish such cars.   (Pp. 78, 79.)

4.—Evidence—Time Required for Transportation.

The admission of opinion as to the time necessary to transport cattle to their destination, from witnesses deriving their knowledge from others, was harmless, where the same proof was fully made by other witnesses testifying from personal knowledge.   (P. 79.)

5.—Requested Instructions.

A requested instruction .was properly refused where it assumed the existence of a controverted fact and excluded an issue raised by the evidence.   (P. 79.)

Error to the Court of .Civil Appeals for the Fifth District in an appeal from Van Zandt County.

Boshear sued the railway company and obtained judgment. It was affirmed on appeal by defendant, who thereupon obtained writ of error.

*Leake & Henry,* for plaintiff in error.

There was error in the admission of the testimony of Allen and Sewell as to what was a reasonable time for the transportation of the shipment of cattle involved in the suit from Wills Point to East St. Louis, the testimony of said witnesses being based partly as stated by them upon general reputation among cattle shippers. Gulf, C. & S. F. Ry. Co. v. Irvine & Woods, 73 S. W., 540; Texas & P. Ry. Co.. v. Byers Bros., 84 S. W., 1087.

The District Court incorrectly refused the following special instruction: "The jury is instructed that the evidence fails to show any authority on the part of W. D. Young to bind the St. Louis, Iron Mountain & Southern Ry. Co. to place cars in Wills Point, Texas, off its own line of railroad, and you therefore can not hold the St. L., I. M. & S. Ry. Co. bound by such a contract, even if you should find and believe from the evidence that W. D. Young made or attempted to make such a contract." Gulf, C. & S. F. Ry. Co.

v. Jackson & Edwards, 99 Texas, 343; Missouri, K. & T. Ry. Co. v. Kyser, 38 Texas Civ. App., 355; Grover & B. Sewing Machine Co. v. Missouri P. Ry. Co., 35 Am. Rep., 446; 6 Am. & Eng. Ency. of Law, 227.

There was nothing in the evidence to justify or sustain a finding that this defendant in any way ratified the alleged contract of W. D. Young to furnish cars for plaintiff's cattle at Wills Point, Texas. Etheridge v. Price, 73 Texas, 601; Smith v. Estill, 87 Texas, 271.

The court erred in refusing the special instruction requested by the plaintiff in error. Gulf, C. & S. F. Ry. Co. v. Sheider, 88 Texas, 167; Missouri, K. & T. Ry. Co. v. Rogers, 91 Texas, 58.

*W. B. Wynne, J. A. Germany* and *H. M. Cate,* for defendant in error.—If an agent makes a contract for his principal, though not within the scope or the apparent scope of his authority, and the principal undertakes to carry out the contract and accepts that which is beneficial to himself, then he is bound by the contract and can not deny that which is hurtful to himself, but must accept the contract as a whole. Houston & T. C. Ry. Co. v. Hill, 63 Texas, 381; McAlpin v. Ziller, 17 Texas, 514; Merriman v. Fulton, 29 Texas, 106; Henderson v. San Antonio & M. G. Ry. Co., 17 Texas, 576.

Mr. Justice Williams delivered the opinion of the court.

This action was brought by the defendant in error against the Texas & Pacific Railway Company and the plaintiff in error to recover for damage to a shipment of cattle from Wills Point, Texas, to St. Louis. The judgment of the District Court was in favor of the former company and against the latter, and the questions now in the case are wholly between the latter and the plaintiff.

A part of the cause of action asserted by plaintiff consisted of a claim that this defendant had broken a contract by which it agreed to furnish cars at Wills Point for the shipment at a specified time, in consequence of which the cattle sustained damage while being held in pens at that place awaiting the coming of the cars. The defendant denied the making of the contract by its agent, as well as his authority to make it. The trial court submitted to the jury the questions whether or not the agent made the agreement, whether or not he had authority to make it, and whether or not, if he had not such authority, the defendant had ratified his action.

Most of the assignments of error depend upon the proposition that there was no evidence of authority of the agent, nor of ratification. The evidence, in brief, tends to show that plaintiff had ordered cars for the shipment of his cattle from Wills Point to Terrell and thence, over the Midland road, to St. Louis. W. D. Young, the traveling freight agent of the defendant, requested Mantius, the station agent of the Texas & Pacific Company at Wills Point, to induce plaintiff to ship by the defendant's route. An interview followed between these two and Allen, plaintiff's agent, in which, according to the testimony of Mantius and Allen, Young agreed to have the cars at Wills Point on Saturday, November 11, and that the cattle should go through to their destination over the Texas & Pacific and the

St. Louis, Iron Mountain and Southern roads. Young denies the making of any agreement and testifies that he only promised to do the best he could to furnish the cars. He further testifies that his authority was merely to solicit freight shipments for the company represented by him, and that he had no authority from it to agree to furnish cars at points off its road. At the time of the alleged agreement a rule of the Texas & Pacific Company forbade its local agents to receive cattle and obligate it to ship them beyond its line, unless other companies over whose lines they were to go would furnish cars for the purpose, but it allowed the use of its cars to be furnished by the other companies. Mantius testifies that when the agreement was made, at the request and in the presence of Young, he at once wired his superintendent "to request the Iron Mountain to have the cars at Wills Point to receive the cattle on the morning of the eleventh," and that the superintendent at once wired back that the request had been made. Young also states that he wired to the "head man," in Texas, of his road a "notice" that the cars had been ordered and the request that he have them furnished. The cars did not arrive on the 11th, but Young was at Wills Point on that morning to see to the billing and loading of the cattle and stated to plaintiff that he did not know why the cars had not come, but assured him they would be there in a little while. They did arrive on Sunday morning.

None of the telegrams mentioned were produced and the defendant offered no evidence as to Young's authority, or as to ratification, except his statement already quoted. The plaintiff adduced evidence of several other transactions in which Young had made agreements for his company to furnish cars at stipulated times on other roads, which agreements were complied with.

We think the evidence justified the submission of the questions both as to authority and as to ratification.

The reliance of the plaintiff in error is upon the decision of this court in Gulf, Colorado & Santa Fe Railway Company v. Jackson & Edwards (99 Texas, 343), to the effect that a soliciting agent, like Young, has no implied authority to bind his principal, a railroad company, to undertake the carriage of freight over other roads than its own. In that case there was no evidence either of authority or of ratification. The fact that the cars were furnished was not evidence of ratification for the reason that the cattle were tendered to the company on its own line and it was bound without any contract to furnish cars and to receive the freight upon proper demand. Its action in doing this therefore had no tendency to show that it was acting upon the unauthorized agreement of its agent; and when the property was received the company demanded the execution of contracts limiting its obligation to a carriage over its own road. In the present case the evidence that other agreements of the agent like that in question were recognized and acted upon by the company unquestionably tends to show that the making of such agreements was within his actual authority.

The most plausible contention is that it was error for the trial court to submit the issue of ratification in addition to that of prece-

dent authority. While the cars were eventually furnished, it is urged that this does not show action by the defendant in error, because they may have been furnished by the Texas & Pacific Company. But the answer to this is that the whole transaction was evidently conducted in accordance with the rule or custom of the latter company that responsibility for through transportation must be assumed, if at all, by its connecting carriers. It was the Iron Mountain Company that was called upon, in accordance with that understanding, to furnish cars for a through transportation. The inference is justified that the cars sent were sent by or for that company. But it is said that this still furnishes no evidence of ratification of Young's agreement, because it does not appear that the principal acted upon and with knowledge of it. If the case were one in which freight was tendered upon the line of the company furnishing the cars, the objection might be unanswerable, for, as already remarked, it could not be inferred that the cars were sent upon the agreement, rather than in the discharge of a legal duty existing without agreement. But this company was not bound to furnish cars on another line unless it agreed to do so. To insure the passing of the freight over this defendant's road the rule of the other company exacted the furnishing of the cars by it, and from the fact that it furnished cars to be used off its line in response to such notice as was given the jury might well infer that it acted upon an agreement by which alone it could have been required to do so.

Objection was made during the trial to the admission of the evidence of certain witnesses as to the time required for stock trains to make the trip from Wills Point to St. Louis. The witnesses showed that they had made other trips and were qualified to testify to the fact. Two of them also spoke of knowing the time from conversations with others and from general reputation, but this was not their only qualification. Whether this would have been an admissible way of showing the time we need not decide, since that was fully shown by a number of witnesses testifying from their own knowledge.

The defendant would have been entitled, upon proper request, to have had the jury correctly instructed as to the legal effect of a mere promise such as Young testified to, but the instruction requested, "that the statement of W. D. Young that he would try or would use his best endeavors to have the cars furnished at Wills Point by Saturday would not be a contract or agreement to do so, and your verdict will be for defendant," was objectionable in that it assumed that Young's statement was as he testified, when there was a conflict of evidence about it, and in that it excluded any right of recovery on the other ground set up by plaintiff, that the cattle were negligently handled on plaintiff in error's own road.

*Affirmed.*