S. & D. WOLF COMPANY, Appellant and Appellee,

v.

The ATCHISON, TOPEKA and SANTA FE RAILWAY COMPANY, Appellee and Appellant.

No. 13118.

Court of Civil Appeals of Texas.

San Antonio.

April 3, 1957.

Rehearing Denied May 1, 1957.

Ward & Brown, Corpus Christi, Wm. E. Remy, San Antonio, for S. & D. Wolf Co.

Bond Davis, Elwood Cluck, San Antonio, for Atchison, Topeka & Santa Fe Ry. Co.

POPE, Justice.

S. & D. Wolf Company, a private corporation, consignee, sued The Atchison, Topeka and Santa Fe Railway Company, hereafter called carrier, for damages to three cars of produce. Each car is a separate count and a separate lawsuit. Consignee appealed from an adverse judgment upon a jury verdict on Count I, and from an instructed verdict on Count II. Carrier appealed from a judgment in favor of consignee on Count III. Consignee complains that the verdict on damages on Count I is against the undisputed evidence. On Counts I and II, consignee complains that the court erred in excluding the testimony of its witness which would show that the carrier delayed the shipments so they arrived late and at a lower market. Carrier's point on Count III is that the jury was guilty of misconduct in discussing law not included in the court's charge.

Consignee's point about Count I is that the jury's answer to the damage issue is contrary to the undisputed evidence. The court submitted two issues on Count I. In answer to the first issue, the jury found that the lettuce was delivered to the carrier in good condition at Phoenix, Arizona. In answer to the second special issue, the jury found that the value of the lettuce at destination on the delivery date, if delivered in good and marketable condition would have been $1,461.06. That was the exact amount that the consignee received for the car of lettuce, which was approximately $4.52 per carton. Because that was the value if delivered in good condition and because the consignee in fact received that amount, the jury found in effect there was no damage.

The consignee argues that the finding about damages is contrary to the undisputed evidence because the evidence showed that the lettuce was in good condition at Phoenix, the point of origin, but at Philadelphia the lettuce had an average of fourteen percent slimy decay. The facts before the jury concerning the value of the lettuce in good condition are these: The inspection certificate made by the Department of Agriculture at origin showed "By request of applicant inspection made for solidity and pack only." The words "Quality and condition," which were printed on the certificate, were marked out, indicating that there was no inspection of the quality and condition of the produce. The second special issue inquired about values on delivery date, which was November 15, 1951. Government market reports in evidence showed that Arizona lettuce, on November 15, brought peak prices of $10 per carton. Fair quality lettuce brought $8.50, and "poorer" quality brought $4.40 to $6.50. Samuel Wolf, for the consignee, testified that the lettuce in this suit would have brought $8.50. The jury found that it would have brought $4.52.

The jury was not bound by the testimony of consignee's witness that the value of the lettuce was $8.50 per crate if there was evidence upon which the jury could make other inferences. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194; Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792. It could make several inferences. At the point of origin, though the lettuce was good, the jury could infer that it was not of such quality that the shipper was especially proud, since he asked for no inspection of the quality. They could infer that one who expects premium prices ordinarily would be the one most anxious to have the origin inspection report reflect that the produce is of premium quality rather than reflect merely the solidity and pack. They could infer that while it was good, it was not the best. They could infer that since the consignee saw the lettuce only at destination he expressed a mere opinion about the value, and that his opinion was self-serving. They could also infer that since the consignee had proved no more than the fact that the lettuce met minimum qualifications for good lettuce, they would allow consignee no more than the minimum value for good lettuce. The jury, within the evidence and the inferences from that evidence, found that the lettuce was "good", but no better than "good". This is further supported by the market reports in evidence, which state that the quoted prices are on "stock of generally good marketable quality and condition." A shipper has a privilege to limit the inspection, but when he does so, he can not complain that a jury attaches adverse inferences to those facts which are not fully disclosed. A carrier by issuing the bill of lading acknowledges receipt of produce in good condition, but it does acknowledge that the produce will receive as high a price as produce of a higher quality. 77 C.J.S. Sales, § 183c. Good is a relative term. 46 Am.Jur., Sales, § 150. This is not a case of no evidence. It is a case wherein jurors drew adverse inferences from the absence of proof which the shipper could have supplied.

Consignee also complains that the court reversibly erred in excluding his deposition evidence of delay in transportation,

with a resulting decline in market price for the shipments concerned on both Count I and Count II. The harm resulting to consignee is that the special issue on damages in Count I, inquired about the value of the produce on the day the market was lowest, and on Count II, the court instructed a verdict against the consignee. If the court erred in excluding the evidence, there was harm. There appears some misunderstanding about the record. Consignee starts on the premise that the record shows no objection to the proffered expert testimony about delay. At the time consignee offered the evidence, counsel for the carrier approached the bench and out of the reporter's hearing, both counsel discussed something with the court. The court then announced that the objection was sustained, without stating the nature of the objection. This also occurred on Count II. The court, after the conference, excluded those answers which related to routes and schedules and which would have proved carrier delay.

■ At the first recess for the jury after this transpired, both counsel for consignee and counsel for carrier stated into the record what they understood the record and the court's rulings should reflect with reference to objections and the evidence. At that point carrier's counsel fully stated into the record the nature of his objection to the excluded expert testimony. That objection was that the witness "failed to qualify * * * as an expert witness on schedules and, for the further reason, that there is no showing whatsoever in the case that Samuel Wolf knew what the railroad schedules were between the origin of the shipment at Phoenix, Arizona, and the destination of the shipment in Philadelphia, Pennsylvania." The only qualifying evidence was that the witness for thirty years had experience as a receiver of produce. From what points in the United States and over what railroads he received produce, and his knowledge of schedules and connections are not shown. So far as the record shows, the two shipments in suit may have been the only ones he ever received from Arizona. The court has wide discretion in passing on the qualification of expert witnesses. Mars v. Panhandle & S. F. Ry. Co., Tex.Civ.App., 25 S.W.2d 1004. The court did not abuse that discretion, for the record is absent any proof that the witness knew the schedules. St. Louis, I. M. & S. R. Co. v. Boshear, Tex.Civ.App., 108 S.W. 1032, affirmed 102 Tex. 76, 113 S.W. 6; Cleburne Peanut & Products Co. v. Missouri, K. & T. R. Co. of Texas, Tex. Civ.App., 184 S.W. 1070, reversed on other grounds, Tex.Com.App., 221 S.W. 270.

■ Carrier is appellant on the third count. It claims that the jury was guilty of misconduct because two jurors, outside of the record and charge, made representations to the other jurors that the law required a carrier to give the consignee notice of the arrival and placement of the car. However, the misconduct hearing developed the fact that the jurors discussed only the terms and provisions they found written on the bill of lading, which was in evidence for Count I. Testimony for Count III was that there was also a bill of lading issued for Count III. The jury was free to consider all the evidence and exhibits which were before it without limitations, and the thing discussed was the meaning of the words in the bill of lading. The jurors stated that they discussed those things which were "in black and white" on the bill of lading. Jurors have the right to discuss those matters which are placed before them without objection and limitation. Blaugrund v. Gish, 142 Tex. 379, 179 S.W. 2d 266; Tondre v. Gerloff, Tex.Civ.App., 257 S.W.2d 158; Smallwood v. Edmiston, Tex.Civ.App., 246 S.W.2d 220. The court overruled the motion for new trial, and in doing so impliedly found that there was no misconduct. Texas Employers' Ins. Ass'n v. Tate, Tex.Civ.App., 214 S.W.2d 877, 881; Church v. Texas & Pacific Motor Transport Co., Tex.Civ.App., 193 S.W.2d 994.

The judgment is affirmed on all three counts.