**COMMUNITY LIFE & HEALTH INSURANCE COMPANY, Appellant,**

v.

**Pauline McCALL, Appellee.**

**No. 8381.**

Court of Civil Appeals of Texas, Amarillo.

June 25, 1973.

Rehearing Denied July 16, 1973.

Crenshaw, Dupree & Milam, Cecil Kuhne, Lubbock, for appellant.

Kirby, Ratliff & Sansom, Littlefield, Gibbins & Spivey, Broadus A. Spivey, Austin, for appellee.

REYNOLDS, Justice.

A jury-verdict judgment was rendered decreeing recovery by the legal beneficiary of the premiums paid for a hospitalization insurance policy, and the death benefits designated payable in an accidental death and dismemberment insurance policy, together with statutory penalties and a total sum for attorney's fees. The appellant-insurer has appealed from the judgment on points of error addressed to the appellee-beneficiary's failure to discharge her burden of proof by admissible evidence. Affirmed in part; reversed and rendered in part; and reversed and remanded in part.

Appellant Community Life & Health Insurance Company issued two insurance policies insuring R. P. McCall, whose wife, appellee Pauline McCall, is the legal beneficiary. Policy No. 46349 is a hospitalization insurance policy of limited benefits payable for loss due to hospital confinement and other specified expenses resulting from accidental bodily injury or sickness, with the provision that

"In the event of accidental death . . . the Company will . . . pay . . . without interest an amount equal to one times the amount of premiums paid . . . on this policy, but

not to exceed an aggregated amount of $5,000.00."

Policy No. 246349 is an accidental death and dismemberment insurance policy of scheduled specific benefits for loss resulting from policy defined accidental bodily injury, the scheduled death benefit being $5,000.00,

> "If such accidental bodily injury shall, independent of all other causes . . . result in . . . LOSS OF LIFE . . . ."

Under the heading "DEFINITIONS" in the policy, there appears this statement:

> " 'Accidental Bodily Injury', wherever used in this policy, shall mean an injury that occurred after the effective date of this policy as the direct result of accident as evidenced by a visible contusion or wound, broken bones revealed by X-Ray, or internal injuries revealed by X-Ray or autopsy."

Both policies were in force at the material times.

In mid-afternoon of February 9, 1972, R. P. McCall left his home driving his pickup truck. On the next morning of February 10th, between the hours of six and seven o'clock, the body of McCall was found floating near his pickup in a shallow playa lake located six-tenths of a mile east of Littlefield, Texas, adjacent to Farm Road 94. The pickup was submerged in the lake up to the top of the hood and the left front door was open. The ignition key was in the "on" position, but the engine was not running. There was a wind out of the north or northeast, the weather was extremely cold, and the chill factor was between eighteen and twenty-two degrees below zero. Although there were no eye witnesses to the event, there is no dispute that the evidence established that the pickup had veered off the asphalt surface of the road at a forty-five degree angle, gone over a metal delineator post causing a sight dent in the vehicle's front chrome strip, travelled more than ninety feet in a straight line down an embankment into the lake, and stopped some twenty-five feet into the lake.

Justice of the Peace Stanley Doss ordered an autopsy, which was performed by Dr. H. P. Clifton, Jr., a medical doctor specializing in pathology. In performing the autopsy after the body had been embalmed, Dr. Clifton reported that no external evidence of trauma was found;[1] the only abnormal external finding recorded was the hemorrhage present in the area of embalming. The autopsy protocol recorded " . . . the heart to be slightly enlarged . . . " and in " . . . the coronary vessels . . . a moderate to severe degree of atherosclerosis with an area of recent occlusion of the anterior descending branch of the left coronary artery." As a result of his autopsy, Dr. Clifton's pathological diagnosis was "CORONARY ATHEROSCLEROSIS WITH RECENT THROMBOTIC OCCLUSION AND OLD MYOCARDIAL INFARCTION"; the cause of death was stated to be "CORONARY ATHEROSCLEROSIS WITH THROMBOTIC OCCLUSION." Dr. Clifton reported to Justice Doss by telephone that he had found no evidence of trauma or drowning and that McCall " . . . died of a heart attack."

Justice of the Peace Doss conducted an inquest. After the inquest and having been furnished with a copy of the autopsy report, Justice Doss completed the certificate of death to show the immediate cause of death as "Cardiac arrest" due to "Automobile accident," and described how the injury occurred by inserting the words "heart attack caused by an automobile accident."

1. The justice of the peace, the mortician attending the deceased, and Mrs. Pauline McCall noticed a small discolored bump on the deceased's forehead; however, there is no testimony that the bump itself was a significant factor in the cause of death.

Mrs. McCall's claims to the amount of premiums paid under policy No. 46349 and to the death proceeds specified in policy No. 246349 were denied. The reason given for denial was that the circumstances of Mr. McCall's death do not come within the policy provisions defining loss of life as the result of accidental bodily injury. This suit resulted.

The issues were joined on the contrary contentions of the parties. It was and is Mrs. McCall's contention that her husband's death resulted from an accidental bodily injury independent of all other causes. She testified that her husband had been in good health the last year or so before his death, he was not taking medication, there had been no complaints about his physical, mental or emotional state, and he had been working without any limitations on his activities. The theory advanced is that the accident occurred because McCall fell asleep while driving his pickup and it ran into the lake. Awakened, McCall opened the door, at which point he had to be alive and healthy to exert the pressure required to open the submerged door, and stepped into the water to walk back to dryland. This reconstruction of events, so the investigating highway patrolman testified, is consistent with his investigation of the accident. Proceeding, the theory is that the extreme cold and the extremely cold water were such a violent shock to McCall's system that he suffered bodily injury and died from a heart attack, the sole cause of death, after ventricular fibrillation, the immediate cause of death, developed. This reconstitution is maintained supportable by Dr. Clifton's testimony and the certificate of death admitted in evidence, although appellant objected to

the admission. The basic reliant testimony of Dr. Clifton is his statements that ventricular fibrillation was the immediate cause of McCall's death,[2] the heart attack was the sole cause of death, and his response of "Right" when asked if it was true that a person can derive ventricular fibrillation from sudden shock of ice cold water, irrespective of whether a person is an exact medical replica of McCall or not as he existed at the time of the autopsy. The certificate of death is asserted to be, by virtue of Rules 40a and 54a under Article 4477,[3] and Article 3731a, admissible prima facie evidence of the deceased's accidental death. The conclusion drawn is that the theory is sufficiently supported by the evidence to require jury determination of, and to sustain its findings with respect to, the fact issues submitted.

To support its defense that McCall's death did not result from accidental bodily injury independent of all other causes, appellant relied on the medical evidence adduced through the testimony of the two, and only, medical witnesses presented as it related to the circumstances. Both parties introduced portions of Dr. Clifton's desposition testimony, presenting his interpretations of his significant autopsy findings and expressing his opinions. Excerpts of Dr. Arrington's testimony given personally in another trial were introduced by appellant, and both parties presented portions of Dr. Arrington's deposition testimony.

Respecting the autopsy, Dr. Clifton found no external evidence of trauma, defined as " . . . a physical blow or injury . . . various forms of violence such as a broken bone or bruising or an abrasion or a cut . . .," nor any exter-

2. Dr. Arrington (whose identity and testimony are subsequently recited), assuming that McCall suffered ventricular fibrillation, described ventricular fibrillation as " . . . a lethal interferrence (sic) with the heart beat . . . The ventricle, the pumping portion of the heart has muscle fibres in it, and when we say 'ventricular fibrillation,' those muscle fibres, instead of contracting as a unit

and pumping blood, they fibrillate; they wiggle like a bag of worms; they do not work in a coordinated fashion, and they do not pump any blood at all. The heart, for all effects, ceases to beat . . . . "

3. All statutory article references are to the number under which the article appears in Vernon's Ann.Tex.Civ.St.

nal evidence that McCall had been involved in an automobile accident. The abnormal external finding of hemorrhage in the area of embalming was attributed to the embalming process. Dr. Clifton listed the internal abnormalities he discovered. The slightly enlarged heart had dilation of the two chambers that pump blood and an area of old myocardial infarction or heart attack. The recent occlusion, or blood clot, had formed within twelve hours before death and would result in a recent heart attack. Atherosclerosis, a term Dr. Clifton uses interchangeable with arteriosclerosis, means a hardening or narrowing of the internal diameter of the arteries, and was present in a moderate to severe degree, causing a person to be predisposed to have a heart attack. Internally, Dr. Clifton found no evidence of truama or of drowning and, other than the embalming incision, he found no contusions, no wounds, and no broken bones.

The cause of death listed as coronary atherosclerosis with thrombotic occlusion was determined by Dr. Clifton because McCall " . . . had narrowing of his arteries . .. . and had a recent blood clot in one of the vessels which would have caused him to have a heart attack." Dr. Clifton's opinions based upon reasonable medical certainty were that the heart attack was the sole cause of McCall's death, ventricular fibrillation was the immediate cause of death, and within reasonable medical probability the atherosclerosis was a contributing factor to the ventricular fibrillation and to McCall's death.

Dr. Clifton stated that a blood clot can form from more than one cause, and that a person, irrespective of whether he had a good or bad heart or a medical record like that of McCall, can die of ventricular fibrillation from shock of ice cold water, and that it is possible for a person to die from ventricular fibrillation from sudden emotional stress. Dr. Clifton, when asked if it is within reasonable medical probability that McCall's stepping or falling into the cold water would cause him to suffer a heart attack, replied, "I will say it is a possibility but highly unlikely and that is partially based upon the fact that nearly anything is possible but it is very unlikely." The doctor was not particularly surprised to find McCall's condition of atherosclerosis not different from any other man of the same age as McCall.

Dr. Joe A. Arrington is a medical doctor specializing in, and certified as a specialist in the practice of, cardiovascular diseases. He is associated with Drs. Gordon, Hull, King and Jenson, cardiovascular specialists, in the practice of cardiovascular diseases. He referred to McCall's recorded medical history. In an 1948 examination by Dr. Gordon, McCall ". . . had bronchopneumonia and an acute paroxysmal atrial tachycardia, which means that he had a rapid heart action, paroxysmally, at a rate of 200 per minute." The normal rate, without exercising, is in the range of 70 to 90. McCall was hospitalized and treated. In 1955, after being hospitalized three or four days with the flu, McCall was seen by Dr. Hull, who found lung infection and heart racing. Dr. Hull made a diagnosis of obesity and early arteriosclerotic heart disease. Medication was prescribed and McCall was asked to return in four weeks, but he failed to do so. McCall was hospitalized for a week in January, 1969, by Dr. Faust, who told McCall that he had had a heart attack. In February, 1969, McCall consulted Dr. Arrington and the diagnosis was " . . . arteriosclerotic heart disease with coronary artery insufficiency and questionable heart infarct, heart attack." An electrocardiocram taken at this time and compared with the 1948 and 1955 electrocardiograms showed a striking change comparable with, but not necessarily, a heart attack occurrence between 1955 and 1969. Medications were prescribed and McCall was reexamined in March and May, 1969, at which times electrocardiograms revealed a more normal situation. Medications were again prescribed and McCall was scheduled for re-examination and an electrocardiogram in six

months, but he did not return to Dr. Arrington.

In his testimony, Dr. Arrington explained the meaning of the terms arteriosclerosis and arteriosclerotic heart disease. Arteriosclerosis means a hardening of the arteries, but if it does not affect a vital area, there is no heart disease; that is, if arteriosclerosis does not keep the heart from functioning normally, then arteriosclerotic heart disease is not present. Arteriosclerotic heart disease, used interchangeably with the term atherosclerotic heart disease, means that the heart is diseased by the hardening of the arteries, or arteriosclerosis; and this disease occurs when there is developed enough hardening of the arteries so that there is not a sufficient blood supply to the heart muscle.[4]

Dr. Arrington, questioned about Dr. Clifton's autopsy findings, stated his opinion that the reported recent clot blocked or occluded the narrowed arteriosclerotic artery causing a lack of blood supply, and McCall had a heart attack. His opinion was that if a clot forms in a heart or a coronary artery, it always forms in an area of arteriosclerosis. He did not think that, under the related circumstances of the accident, the shock of the cold water would cause a heart attack in a person who did not have a moderate to severe degree of atherosclerosis. Although an occlusion such as was diagnosed in McCall can be caused from a sudden emotion, there must be existing arteriosclerosis or a heart attack will not occur, and an occlusion or a clot, such as was found in McCall, would not be brought on by suddenly getting out of a pickup truck into cold water without the existence of a pre-existing arteriosclerosis disease.

Appellant's motions for instructed verdict, presented after appellee had rested and after all the evidence was adduced, and based on grounds that appellee had failed in her burden of proof, were overruled, and the case was submitted to the jury over appellant's objections. The jury found, in response and corresponding to the numbered special issues, that (1a) R. P. McCall sustained an accidental bodily injury on February 10, 1972, (1b) that was a proximate cause of his death, and (1c) that was the sole proximate cause of his death; and (2) reasonable attorney's fees were the sum of $2,544.00. Judgment was entered on the verdict decreeing appellant's liability on both insurance policies for, and recovery by appellee of, $88.00 for premiums paid and $10.56 statutory penalty under policy No. 46349, $5,000.00 death benefits and $600.00 statutory penalty under policy No. 246349, and $2,544.00 attorney's fees.

Appellant preserved and asserts eleven points of error to which appellee has replied. The first two points are that the trial court erred in overruling the motions for instructed verdict; the next four points are that there is no evidence and factually insufficient evidence to support the submission of special issues Nos. 1a and 1c. Point seven is that appellee failed to prove and obtain jury findings that McCall's death did not result from accidental bodily injury independent of all other causes. By point eight appellant challenges the admission of the certificate of death in evidence. The last three points are that the contingent fee contract between appellee and her attorney was erroneously admitted in evidence over objections and that there is no evidence and factually insufficient evidence to support the submission of special issue No. 2. The par-

---

4. Both testifying doctors agreed that hardening of the arteries is a part of the aging process of our society. Dr. Arrington reported that heart evaluators call arteriosclerosis and arteriosclerotic heart disease the "Modern American Epidemic" because 55 per cent of the people who die in the United States die of hardening of the arteries, or diseases related directly to this. Experiments in Korea and South Viet Nam revealed that young soldiers had arteriosclerosis to the extent that the medical profession had to re-examine its thinking on the matter.

ties have briefed and argued the case on appeal with the same legal principles applicable to both policies; however, the basis of the agreement between the insurer and the insured is not the same in both policies.

In view of the express contractual liability terms of the accidental death and dismemberment policy No. 246349, it is not sufficient to show that accidental bodily injury was a proximate cause of death; it is necessary to show that a policy defined accidental bodily injury caused the death "independent of all other causes," that is, such injury was the sole cause of death. Mutual Benefit Health & Accident Ass'n v. Hudman, 398 S.W.2d 110 (Tex.1965). This is the basis of this insurance contract. Hence, to escape appellant's right to an instructed verdict and to be entitled to a jury determination of factual issues, it was obligatory that appellee produce some evidence of probative force that the deceased's accidental bodily injury was the sole cause of his death. See Standard Life & Accident Insurance Co. v. Roberts, 318 S.W.2d 757 (Tex.Civ.App.—Amarillo 1958, writ dism'd). Both parties accept the heart attack as the cause of death; the dispute is over the state of the evidence bearing on the cause of the heart attack. Appellee contends the evidence raised the fact issue of whether violent shock resulting from the accidental events precipitated the fatal heart attack and supports the jury finding that such accidental injury was the sole cause of death; appellant contends that appellee failed to controvert the undisputed medical evidence establishing that McCall's pre-existing heart condition and disease materially and substantially contributed to cause his death.

In considering the evidence, the general rule is that the trier of the facts may accept in part and reject in part the opinions of any witness, but the rule is subject to qualification. Initially, the testimony of the witness will be looked to and examined as a whole to give it true effect, Dotson v. Royal Indemnity Company, 427 S.W.2d 150 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n. r. e.), and to determine its legal sufficiency in support of the essential issues. Jones v. Traders & General Ins. Co., 140 Tex. 599, 169 S.W.2d 160 (1943). Additionally, where the subject is one for experts alone and the court or jury has no experience in, or no knowledge of, the specialized subject, the unanimous and uncontroverted opinions of the experts are conclusive. See Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943 (1944).

It is judicially recognized that certain specialized medical matters are peculiarly within the factual knowledge of experts and are without the scope of a layman's knowledge, Parker v. Employers Mutual Liability Ins. Co. of Wis., 440 S.W.2d 43 (Tex.1969); Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex.1966); Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779 (1949), and within the area of medical science, only the opinions of medical experts can have any value in forming conclusions as to the cause and effect of a heart attack. Dotson v. Royal Indemnity Company, supra; Standard Life & Accident Insurance Co. v. Roberts, supra. Thus, the cause of McCall's heart attack is a question of science determinable only from the testimony of medical experts, and must be founded on reasonable probability, and may not rest on possibility. Insurance Company of North America v. Myers, supra.

Accepting as true appellee's reconstruction of the events preceding McCall's heart attack, the only expert medical testimony, based on a reasonable medical probability, bearing on the causation aspect of McCall's heart attack is the testimony that his pre-existing diseased condition concurred with the accident to cause the heart attack and death. Dr. Clifton's opinions that were based upon and within reasonable medical probability were that coronary atherosclerosis and the recent blood clot caused McCall's heart attack and ventricu-

lar fibrillation, and that the atherosclerosis was a contributing factor to the ventricular fibrillation and to the death. Dr. Arrington gave his opinions that if a clot forms in the heart, it always forms in an area of arteriosclerosis, and a clot such as was found in McCall would not, under the related circumstances of the accident, occur without the existence of a pre-existing arteriosclerosis disease. Furthermore, Dr. Arrington stated that for a clot such as was diagnosed in McCall to be present there must be existing arteriosclerosis or a heart attack will not occur.

Appellee nevertheless argues that, tested by the rules applicable to instructed verdicts and the sufficiency of the evidence, the evidence was sufficient to create and support the factual issues determined. That there was an accident is not disputed. The medical testimony cited—viz., arteriosclerosis is a common part of the aging process, and McCall's condition was not different from that of any other man of the same age; Dr. Clifton's acknowledgment that a person irrespective of his heart condition or medical record, "can" die of ventricular fibrillation from suddon shock of ice cold water, and it is a "possibility" for a person to die from ventricular fibrillation from sudden emotional stress, and his opinion that this heart attack was the sole cause of death; and Dr. Arrington's admission that numerous important aspects of McCall's accident are beyond the scope of doctors' special knowledge—as well as the other medical evidence examined in consideration of support for appellee's position, consists of no more than medical possibilities when all the medical evidence is examined as a whole to determine its true meaning and legal sufficiency. Medical possibilities can be no more than speculation and conjecture when considered in connection with the scientific question of causation. Insurance Company of North America v. Myers, supra; Parker v. Employers Mutual Liability Ins. Co. of Wis., supra.

Appellee further relies on the certificate of death, under Rules 40a and 54a of Article 4477, and under Article 3731a, as being admissible prima facie evidence of accidental death. The authorities cited in support of this proposition have been carefully examined. In each of the cases, the opinion either specifically states or implies that the medical certification part of the certificate of death was completed by a physician. That is not the existent situation in our case, for here the certificate of death was completed by a justice of the peace who admittedly had no medical training or experience, and who admittedly had no medical basis for his opinion. The certificate of death was received in evidence over objections that it was incompetent evidence of accidental death since that was the issue in dispute. Research has revealed no case where a certificate of death prepared by a justice of the peace has been properly admitted as evidence of the facts stated therein under circumstances such as exist in this case. Rule 40a is the provision of Article 4477 concerned with the medical certification being made, not by a layman, but by the physician, if any, last attending the deceased. It has been held that a certificate of death not prepared by the physician is not admissible under this provisional rule, Tichenor v. Little, 279 S.W.2d 379 (Tex.Civ.App.—Galveston 1955, writ ref'd n. r. e.); and that, if prepared by one unskilled in the matters to which it relates and admitted in evidence even under the proper certification required by Rule 54a for it to be prima facie evidence of the facts stated therein, the certificate of death is incompetent as evidence upon causation and may not be resorted to in determining liability. Service Mut. Ins. Co. of Texas v. Banke, 155 S.W.2d 668 (Tex. Civ.App.—San Antonio 1941, writ ref'd); Union Central Life Ins. Co. v. Boulware, 238 S.W.2d 722 (Tex.Civ.App.—Beaumont 1951, no writ). Article 3731a makes provision for a written instrument, including a certificate, when prepared by a governmental officer in the performance of the

functions of his office, so far as relevant, to be admitted in court as evidence of the matters stated therein. However, a certificate of death made by a justice of the peace is not admissible under this article on the contested issue of the cause of death. Armstrong v. Employers Casualty Company, 357 S.W.2d 168 (Tex.Civ.App. —Waco 1962, no writ).

Moreover, since the certificate of death relied on as prima facie evidence of accidental death was the product of a medically untrained and inexperienced person, who admittedly had no medical basis for the opinion he expressed therein, injected in a medical area where only expert medical testimony can serve to prove the reasonable medical probability of causal connection, the certificate of death may not convey an opinion the author is not qualified to personally give and must yield to the expert testimony. Furthermore, the combination of the factual circumstances of an injury and lay testimony, together with expert medical testimony clearly limited to possibilities, is insufficient to support an inferential fact where the question is one of science determinable only from the testimony of medical experts. Insurance Company of North America v. Myers, supra. Consequently, the certificate of death was erroneously admitted in evidence.

■■ Finally, pointing out that arteriosclerosis is a physical condition common in mankind, and characterizing it as a strictly technical disease, appellee suggests that to permit the condition to defeat recovery is to permit insurance companies to take premiums without any risk of loss, and thereby cheat the public. That, of course, is neither the substance nor the intent of the decision we reach, for it is settled in Texas law that not every pre-existing bodily condition will defeat recovery under the liability terms of the accidental death and dismemberment policy issued to the deceased. See Mutual Benefit Health & Accident Ass'n v. Hudman, supra, where it is made clear that in the usual scientific case, the expert testimony delineates the inoperative conditions from the real causes of the injury or death, or at least raises one or more fact issues for determination by the fact finder. Here, the accidental death and dismemberment policy did not cover any loss materially caused or contributed to by McCall's pre-existing condition, but covered only loss from accidental bodily injury independent of all other causes. Since all of the competent medical evidence based on a reasonable medical probability is in agreement that McCall's pre-existing condition concurred with the accident to cause his death, and the certificate of death may not be considered, there is no competent evidence that McCall's accidental bodily injury was the sole cause of his death, Mutual Benefit Health & Accident Ass'n v. Hudman, supra, and appellant is entitled to judgment denying its liability on the accidental death and dismemberment policy No. 246349.

■■ A different situation is presented with respect to the hospitalization policy No. 46349. The only requirement prerequisite to recovery of the premiums paid is an accidental death. The term accidental death is not defined in the policy; therefore it is only necessary to prove mere proximate cause. Home Ben. Ass'n v. Smith, 16 S.W.2d 357 (Tex.Civ.App.—Texarkana 1929, writ ref'd). Appellant has not challenged the jury finding in special issue No. 1b that accidental bodily injury was a proximate cause of McCall's death; in fact, appellant's position is not that McCall's pre-existing condition was the sole cause of death, but that the pre-existing condition concurred with accidental bodily injury to cause the death. There being evidence of the accident and the resulting death, and the jury finding not being challenged, appellee is entitled to judgment for recovery of the premiums paid on policy No. 46349, together with the statutory penalty.

This, then, requires consideration of appellant's last three points of error. Article 3.62 of the Texas Insurance Code, V.A.T.S., makes provision for allowance of reasonable attorney's fees " . . . incident to the prosecution of the suit, . . . on account of such policy." In consequence of this statutory directive, appellee is entitled to recover only the reasonable attorney's fees incident to the prosecution of her suit on policy No. 46349. The jury finding of reasonable attorney's fees was for the prosecution of the suit on both policies; an examination of the testimony reveals that there is no designation of the legal services necessary to the prosecution of the suit on this policy as opposed to the prosecution of the entire suit. If attorney's fees are to be recovered, it will be necessary to show the legal services required to recover under policy No. 46349.

In the event of another trial, neither the contingent fee contract for attorney's fees nor any evidence relative to it should be adduced. Recovery of attorney's fees is allowed by the statute, not as a fee contingent upon winning the case, but for the reasonable amount necessary for plaintiff to pay her attorney for prosecuting her case. See Southland Life Ins. Co. v. Norton, 5 S.W.2d 767 (Tex.Comm'n App.1928, holding approved); General Life Ins. Co. v. Potter, 124 S.W.2d 409 (Tex.Civ.App.— Eastland 1939, no writ).

Appellant's points of error are sustained. That part of the trial court's judgment decreeing recovery of the death benefits and the statutory penalty under policy No. 246349 is reversed, and judgment rendered that appellee take nothing in her suit on policy No. 246349; that part of the court's judgment decreeing recovery of the premiums paid under policy No. 46349 and the statutory penalty is affirmed; and that part of the court's judgment decreeing recovery of attorney's fees is reversed, severed from the remainder of the case, and remanded to the trial court.