**Ann Joy BETTIS, Appellant,**

v.

**James J. BETTIS, Independent Executor, Appellee.**

No. 12190

Court of Civil Appeals of Texas, Austin.

Jan. 15, 1975.

Rehearing Denied Feb. 5, 1975.

fluence.  Judgment was entered admitting the will to probate.  We will affirm that judgment.

The will in question was signed by the testator, James Wallace Bettis, Jr., on January 2, 1973.  He died on March 8, 1973, at the age of fifty-six.  At the time of his death he was married to his second wife, Ann Joy Bettis.  No children had been born to him and his second wife.  By his first wife the testator had two sons, James Jay Bettis and Douglas Dewey Bettis, both over the age of twenty-one at the date of their father's death.  At the time of the execution of the will in question and at the time of death of the testator, the second wife had filed a suit for divorce against him.

In the instrument admitted for probate the testator devised practically all of his estate to his two sons, and named the eldest son, James Jay Bettis, independent executor.  Appellant is the second wife and appellee is the independent executor of the estate.

Appellant attacks the judgment of the district court by five points of error.  The first two points of error are that the jury's answer that the testator had testamentary capacity was supported by no evidence, and, alternatively, by insufficient evidence.  Her third point claims misconduct on the part of the jury in discussing the disposition of the testator's estate in light of her homestead rights.  Her fourth and fifth points are that one of the jurors was disqualified as a matter of law, and that the juror was guilty of material misconduct during the voir dire examination and jury deliberations.

To have testamentary capacity at the time a will is executed, the testator must have been capable of understanding the business he is about, the nature and extent of his property, the persons to whom he meant to devise and bequeath it, the persons dependent upon his bounty and the mode of distribution among them.  He must have had memory sufficient to collect in his mind

Douglass D. Hearne, Stayton, Maloney, Hearne, Babb & Cowden, Austin, for appellant.

John F. Morehead, Gibbins & Spivey, Austin, for appellee.

SHANNON, Justice.

This will contest was tried before a jury on appeal to the district court of Travis County.  In response to two special issues, the jury answered that the testator had testamentary capacity and failed to find that the testator was acting under undue in-

the elements of the business to be transacted, and to hold them long enough to perceive at least their obvious relations to each other, and to be able to form a reasonable judgment as to them. Prather v. McClelland, 76 Tex. 574, 13 S.W. 543 (1890).

■ Appellant's first and second points of error will be overruled as there was evidence to support the jury's answer that the testator had testamentary capacity at the time of the execution of the will, and we are of the opinion that the jury's answer was not contrary to the great weight and preponderance of the evidence.

Appellant's attack upon the testator's testamentary capacity centered upon his admitted alcoholism. Appellant testified that after their marriage in August of 1968, she noticed that his drinking increased. By 1971, his interest in daily affairs had lessened and the record shows that he had entered into the disordered world of drink, consuming a half gallon of hard liquor every two days. From the time that he arose from bed at nine or ten o'clock in the morning and poured himself an eye-opener, he hastened to be drunk—that becoming the business of the day. During this period appellant testified that her husband's disposition was variable depending upon the time of day and the amount of alcohol consumed. Appellant also noticed that he had difficulty in remembering recent events such as whether or not the mail had come that morning.

By January of 1972, appellant testified that she was forced to resort to the filing of a divorce suit in order to impress upon her husband his need for hospitalization. He was finally admitted to Shoal Creek Hospital, and the divorce suit was dismissed shortly thereafter. At the hospital he was as one witness described, "boiled out," and upon his release he returned home with appellant and refrained from drinking until July 4, 1972. At that time he resumed his old pattern of drinking, and his consumption was such that one witness claimed that he " . . . never did really sober up even in his sleep . . . "

In November of 1972, appellant filed the second suit for divorce against her husband. She testified that she filed the second suit for the same reasons as she had the first and that she had discussed the filing with her husband and that he had even promised to go to the hospital if she filed the second divorce suit. After the suit was filed Bettis took an apartment in Port Aransas, and did not return to live with appellant though he visited her on occasion and called regularly by telephone. He signed the will in question on January 2, 1973. The evidence showed that Bettis continued drinking heavily until his final hospitalization and death in Houston on March 8, 1973.

Appellant supported her attack upon her husband's testamentary capacity by the testimony of three physicians. One of the physicians was Dr. John Stafford, a psychiatrist, who treated Bettis during his stay at Shoal Creek Hospital, and who had also examined Bettis' medical records from his final hospitalization. Dr. Richard J. Alexander, a local psychiatrist, not a treating doctor, testified relative to Bettis' testamentary capacity from an examination of the medical records. Both psychiatrists testified that in their opinion it was doubtful that Bettis had testamentary capacity on January 2, 1973, the day of the execution of the will. Dr. Stafford testified that even though Bettis would have been able to understand the will as he began reading it, that he would probably not have remembered the beginning by the time he reached the end of the document. Dr. Touglas Terry, a specialist in internal medicine, treated Bettis in Shoal Creek Hospital. He was also of the opinion that Bettis probably lacked testamentary capacity on the morning when he executed the will.

Appellee offered evidence of Bettis' testamentary capacity by several witnesses. Among those witnesses was James H. Garst,

an attorney and the notary who took the acknowledgment on the self-proving affidavit of the will. Garst had done legal work for Bettis as well as for appellee. Another of appellee's witnesses was Bob Germany, a subscribing witness to the will. Germany had known Bettis for many years as one of his employees for Robertson Tank Line. Appellee also offered the testimony of the attorney who drew the will in question, of neighbors of Bettis' in Port Aransas, of his banker in Port Aransas, of a Houston attorney then representing Bettis on a collection matter, and of a land man who had called on Bettis about two weeks before his death.

Appellee also tendered the testimony of Paul Holt, a member of the Travis County Bar who had represented Bettis in the two divorce suits and in a "Driving-While-Intoxicated" prosecution in the county court-at-law of Travis County. The appellee also called the Honorable Charles D. Mathews, Judge of the 200th District Court in and for Travis County. Judge Mathews had represented Robertson Tank Line for many years and in that representation had known Bettis well. His friendship with Bettis continued after the termination of the attorney-client relationship and Judge Mathews saw him on a fairly regular basis. His last visit with Bettis was in January of 1973. Judge Mathews testified, as did the other witnesses tendered by appellee, that in his opinion, Bettis was possessed of those requirements which constitute testamentary capacity.

In addition, appellee proffered the testimony of Dr. Jimmy Russell Clemons relative to Bettis' testamentary capacity. Dr. Clemons had not treated Bettis but he had examined his medical records. Based upon hypothetical questions, Dr. Clemons answered that he was of the opinion that at the time of the execution of the will, Bettis had sufficient mental capacity.

Appellant argues under her no evidence point that in view of the testator's chronic alcoholism, his testamentary capacity was to be properly determined solely by expert medical testimony. In support of her position appellant states that the residual effect of toxic by-products of alcohol, the interrelationship of alcoholically induced liver damage and brain swelling, the lingering effect of "wet brain," and the ability of a chronic alcoholic to dissimulate and appear sober are all matters beyond a layman's ken.

In support of her argument, appellant lists a number of cases for the proposition that certain specialized medical matters are peculiarily within the factual knowledge of experts and are without the scope of a layman's knowledge. Texas Prudential Insurance Co. v. Dillard, 158 Tex. 15, 307 S.W.2d 242 (1957); Community Life and Health Insurance Co. v. McCall, 497 S.W.2d 358 (Tex.Civ.App.1973, writ ref'd n. r. e.); Combined American Insurance Co. v. McCall, 497 S.W.2d 350 (Tex.Civ.App.1973, writ ref'd n. r. e.); National Life and Accident Insurance Co. v. Shern, 389 S.W.2d 726 (Tex.Civ.App.1965, no writ); Scott v. Liberty Mut. Ins. Co., 204 S.W.2d 16 (Tex.Civ.App.1947, writ ref'd n. r. e.). These cases are concerned with the presence of epilepsy, the causes of heart attacks, the existence of emphysema, and the causation between a work-connected injury and a later cancerous condition.

We do not disagree with appellant's cases, but we do not regard those authorities as controlling the disposition of this appeal. We are of the view that alcoholism like other illnesses or senility may effect one's testamentary capacity. And in order to determine testamentary capacity, or lack thereof, the finder of fact should be given all of the relevant and competent testimony regarding the mental condition of the testator, including the fact of alcoholism and its effects upon him. The fact that Bettis was shown to be an alcoholic and that much of the medical testimony was that his condition prevented his having testamentary capacity, did not destroy the efficacy of appellee's lay and medical testimony that he had testamentary capacity.

Appellant's expert testimony was not conclusive of the issue and simply created a question of fact which the jury resolved against her.

■ Appellant's third point of error claims that the court should have granted her motion for new trial because the jury was guilty of misconduct in discussing appellant's homestead rights. Appellant asserts that this discussion constituted a consideration of the effect of their answers upon the outcome of the litigation. Appellant did not support her allegations of misconduct with affidavits, but the court nevertheless chose to hear testimony.

In appellant's first amended contest of the application for probate of the will, she pleaded that " . . . in the event that the Court does admit this will for probate, Contestant would show that she has a considerable undivided community interest in the property owned by this estate and that she further has *homestead rights* and rights to widow's allowances which require protection by this Court." (Emphasis added)

There were several references in the testimony to appellant's homestead rights in and to the Travis County acreage owned by Bettis. Over objection, the trial court permitted appellee to question appellant concerning her homestead rights in and to the Travis County acreage. Also, counsel for appellant during the direct examination of Tom Black read into evidence a letter to Black from counsel for appellee in which it was stated that " . . . it is our understanding that Mrs. Bettis is claiming a homestead interest in 200 acres, in the event that she is unsuccessful in this will contest proceeding." Appellant assigned as error in her motion for new trial the admission into evidence of her testimony concerning her homestead rights in the land. She did not, however, bring forward that complaint as a point of error in this Court.

As is usual, the jury was admonished in the court's charge to consider only the evidence seen and heard in the courtroom, and not to consider or discuss anything not represented by the evidence in the case. Testimony concerning the homestead rights of appellant *was elicited* and *was admitted* into evidence. The jury heard counsel for appellant read a letter from appellee's attorney in which it was stated that it was the understanding that appellant was claiming a homestead right in 200 acres if she were unsuccessful in the will contest. A jury is not guilty of misconduct in discussing evidence admitted by the court during the course of the trial. Blaugrund v. Gish, 142 Tex. 379, 179 S.W.2d 266 (1944) ; City of San Antonio v. Willinger, 345 S.W.2d 577 (Tex.Civ. App.1961, no writ) ; S. & D. Wolf Co. v. Atchison, Topeka & Santa Fe Ry. Co., 301 S.W.2d 272 (Tex.Civ.App.1957, writ ref'd n. r. e.) ; McGee v. Cunningham, 17 S.W.2d 494 (Tex.Civ.App.1929, no writ). Under these circumstances, we have concluded that the jury was not guilty of misconduct in discussing the evidence of the homestead rights of appellant.

■ Appellant's fourth point of error attacks the failure of the trial court to grant a new trial for the alleged reason that juror David L. Luedecke was disqualified as a matter of law from serving as a juror. Her fifth point complains that Luedecke was "guilty of material and unlawful conduct during the voir dire examination *and jury deliberations.*" (Emphasis added)

In the beginning it will be observed that in her discussion in her brief under her fifth point of error, appellant urges misconduct on the part of Luedecke in relating his own personal experiences with alcoholics to the other members of the jury. A reading of appellant's motion for new trial shows that her complaint was there limited to "material and unlawful conduct" of Luedecke during *voir dire examination* in that he gave an erroneous and incorrect answer to counsel's questions. The alleged ground of misconduct in Luedecke's relating his personal experiences

with alcoholics during the deliberations of the jury was not preserved in the motion for new trial, and it will not be considered here.

Because appellant's counsel planned to rely upon psychiatric testimony to show the testator's lack of testamentary capacity, the bill of exceptions shows that he asked each prospective juror whether he had " . . . any bias or prejudice against psychiatrists or psychiatric testimony, or for any other reason would not be willing to weigh the testimony of a psychiatrist as they would that of any other witness." None of the jury panel, including the twelve persons who were ultimately chosen as jurors, indicated any such bias or prejudice.

During the hearing on the motion for new trial, appellant produced testimony from juror Paul N. Hill, corroborated by two others, that during the deliberations of the jury, juror Luedecke told Hill that he " . . . was not about to take the word of any damn shrink, head shrink." Appellant argues that such statement demonstrated that Luedecke was not truthful on voir dire examination in that he in truth entertained a bias and was prejudiced against psychiatrists and psychiatric testimony, and that he was disqualified to serve as a matter of law, Vernon's Tex.Rev.Civ.Stat.Ann. art. 2134, or at least that he was "guilty of material and unlawful conduct."

Appellee called Luedecke to testify during the hearing on the motion for new trial. Luedecke testified that he did not harbor any bias or prejudice against psychiatrists or psychiatric testimony at the time of voir dire examination or at the time of the hearing. He also testified that during the reception of the evidence and during the jury deliberations he accepted the psychiatric testimony in the same way that he would have accepted the testimony of any other witness. He admitted that he had "accidentally" used the term, "shrink," instead of "psychiatrist" in speaking to Hill. He said that he used the term, "shrink,"

in the same manner in which he employed the term, "fuzz" for policemen. In calling policemen, "fuzz," Luedecke denied that he intended any disrespect for them. Luedecke said that his use of the term, "shrink" was a slip of speech on his part and he knew that it was not proper after he had said it, and he so told juror Hill.

All of the other jurors, except for the three called by appellant, testified at the hearing on the motion for new trial that they heard or saw no indication from Luedecke which would have indicated to them that he had a bias or prejudice against psychiatric testimony to such an extent that he would not have considered that class of testimony like any other testimony.

Tex.Rev.Civ.Stat.Ann. art. 2134 § 4 provides that a person shall be disqualified to serve as jurors in any particular case when that person " . . . has a bias or prejudice in favor of or against either of the parties." The disqualification has been extended to those cases in which a juror has a bias or prejudice in favor of or against the *subject matter* of the litigation. Compton v. Henrie, 364 S.W.2d 179 (Tex.1963). Appellant urges that the disqualification be further extended to a bias or prejudice in favor of or against a category of witnesses, in this instance, psychiatrists. We need not decide that question. Assuming the law to be as urged by appellant, we are of the opinion that the trial court properly overruled her motion for new trial. Whether a juror is biased or prejudiced is a factual determination to be made by the court in the event the evidence is conflicting. Swap Shop v. Fortune, 365 S.W.2d 151 (Tex. 1963). In the case at bar the trial court, in overruling the motion for new trial, impliedly found that juror Luedecke was not biased or prejudiced. That finding is amply supported by the statement of facts made in the hearing on the motion for new trial.

The judgment is affirmed.