IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00338-CV

 

State Office of Risk Management,

                                                                                    Appellant

 v.

 

Carolyn Larkins,

                                                                                    Appellee

 

 

 



From the 74th District Court

McLennan County, Texas

Trial Court No. 2004-165-3

 



O p i n i o n



 

This is a workers' compensation case arising out of
an on-the-job assault by a patient against Carolyn Larkins, an employee of the Texas State Hospital in Vernon.  After exhausting her administrative remedies before the Texas
Workers' Compensation Commission (TWCC), Larkins appealed the adverse
determination in district court.  After a bench trial, the trial court found in
Larkins’s favor and reversed the TWCC Appeals Panel decision.  The State Office
of Risk Management (SORM) appeals.[1]  Finding
the evidence legally insufficient to support the judgment, we will reverse the
trial court’s judgment and remand for further proceedings.

Background

In October, 2000, Larkins was monitoring patients
in the gymnasium when a mental-health patient pushed her head and back into a
wall.  Larkins saw a physician the next day and complained of lower back pain. 
This physician sent her to a neurologist, who administered steroidal injections
in her lower back.  As her symptoms persisted, Larkins began to experience headaches
and behavioral changes and was unable to return to work.  Over the course of
the next year, Larkins complained that she experienced memory loss, had constant
pain, and was unable to sleep; she visited several doctors who gave varying
diagnoses.

  Dr. Polatin, a psychiatrist appointed by the
TWCC, found that Larkins had experienced mental illness and gave her a 70%
impairment rating based on post-traumatic disorder, major depressive syndrome,
and post-concussion syndrome.  A TWCC hearing officer later ruled that this impairment
rating was incorrect because Larkins’s compensable injury did not include
“psychological problems.”  In January 2004, her husband filed suit pro se as
her guardian for judicial review of the TWCC decision.  At trial, Larkins
testified but was unable to remember various details of the assault or her
subsequent medical visits.  Larkins also introduced several medical records
that contained information about her injury and diagnoses.  The trial court
reversed the TWCC appeals panel decision and found that Larkins’s compensable
injury includes major depressive disorder, anxiety, and post-traumatic stress
disorder and that her correct impairment rating is 70%.

Standard of Review 

In its first issue, SORM asserts that there was no
evidence to support the trial court’s finding that Larkins’s depression,
anxiety and post-traumatic stress disorder are compensable.  SORM did not have
the burden of proof at trial.

We review a trial court’s finding in the same
manner as jury findings.  See Roberson v. Robinson, 768 S.W.2d 280, 281
(Tex. 1989).  In reviewing the legal sufficiency of the evidence, we view the
evidence in the light favorable to the finding, crediting favorable evidence if
a reasonable factfinder could, and disregarding contrary evidence unless a
reasonable factfinder could not.  City of Keller v. Wilson, 168 S.W.3d
802, 807, 822 (Tex. 2005).  There is legally insufficient evidence or “no
evidence” of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact; (c) the evidence offered to prove a vital fact
is no more than a mere scintilla; or (d) the evidence conclusively establishes
the opposite of the vital fact.  Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997).  More than a scintilla of evidence exists when
the evidence supporting the finding, as a whole, “rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions.'" 
 Id. (quoting Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499
(Tex. 1995)).








Necessity of Expert
Testimony

The general rule has long been that expert testimony is necessary to establish causation as to
medical conditions outside the common knowledge and experience of jurors.  Guevara
v. Ferrer, ___ S.W.3d at ___, 2007 Tex. LEXIS 795, 2007 WL 2457760, at *5
(Tex. Aug. 31, 2007) (explaining that "non-expert evidence alone is
sufficient to support a finding of causation in limited circumstances where
both the occurrence and conditions complained of are such that the general
experience and common sense of laypersons are sufficient to evaluate the
conditions and whether they were probably caused by the occurrence"); see,
e.g., Ins. Co. of N. Am. v. Myers, 411 S.W.2d 710, 713 (Tex. 1966)
(holding that an "inference that a pre-existing tumor was activated and
the deadly effects of a malignancy accelerated by an injury" was a
"question of science determinable only from the testimony of expert
medical professionals"); Roark v. Allen, 633 S.W.2d 804, 809 (Tex.
1982) (holding that "the diagnosis of skull fractures is not within the
experience of the ordinary layman" and therefore required expert
testimony); Kaster v. Woodson, 123 S.W.2d 981, 983 (Tex. Civ. App.—Austin
1938, writ ref'd) ("What is an infection and from whence did it come are
matters determinable only by medical experts.").  However, cases have
acknowledged an exception to the general rule where causation findings linking
events and physical conditions could, under certain circumstances, be
sufficiently supported by non-expert evidence, such as lay testimony.  See
Parker v. Employers Mut. Liab. Ins. Co. of Wis., 440 S.W.2d 43, 46 (Tex. 1969).

The adequacy of lay testimony to prove causation
in workers’ compensation cases has been limited to those cases where the
general experience of, or common sense of, jurors is such that they can
anticipate one event will follow another.  Id. at 46.  For lay
testimony to be sufficient to prove causation, the testimony must prove at
least that the injury in "reasonable probability" caused the claimed
result.  Id.

Generally, lay testimony establishing a sequence
of events which provides a strong, logically traceable connection between the
event and the condition is sufficient proof of causation.  Morgan v.
Compugraphic Corp., 675 S.W.2d 729, 731 (Tex. 1984) (holding that lay
testimony could establish causal connection between chemical leak and Morgan’s
injuries when Morgan, who had previously been in good health, began
experiencing symptoms such as watery eyes, blurred vision, headaches and
swelling of the breathing passages four days after typesetting machine that sat
two inches from her face was found to be leaking chemical fumes); see also
Griffin v. Texas Employers' Ins. Ass’n, 450 S.W.2d 59, 61 (Tex.
1969); Insurance Co. of N. Am. v. Kneten, 440 S.W.2d 52 (Tex. 1969).

  We have previously reversed a directed verdict
in a worker’s compensation appeal involving carpal tunnel syndrome, even though
no expert testimony was presented.  Saenz v. Ins. Co. of Pa., 66 S.W.3d
444 (Tex. App.—Waco 2001, no pet.).  In Saenz, the insurance carrier
argued that Saenz provided no evidence in her case-in-chief to link her hand
injuries to her work as a seamstress.  Saenz did not provide expert testimony
on causation; the only evidence on causation was her own lay testimony.  We
held: 

an injury arises out of employment if the
employment is a producing cause—which means even if there are other
causes for the injury, the employment need only be "a" cause.  Texas Workers' Compensation Ins. Fund v. Simon, 980 S.W.2d 730, 736 (Tex.
App.—San Antonio 1998, no pet.).  

…

We believe this evidence establishes a sequence of
events, from which the jury might have inferred, without the aid of expert
medical testimony, that Saenz's work as a seamstress was "a" cause of
her carpal tunnel syndrome.  We find that some evidence was admitted in Saenz's
case-in-chief to raise a fact issue on causation to be submitted to the jury.

 

Id. at 448.

 

Larkins argues that, under Saenz, lay
testimony is sufficient in this case.  However, Saenz is unlike our case
because it involved an immediate, continuous, uninterrupted chain of events
between the offending activity and the alleged occupational disease.  Here we
have attenuated causation, as there is an eight-month gap between the
incident and the first psychiatric symptoms.  The injury in Saenz was
also logically related to the work activity.  It is within reasonable probability
that continuous and painful movement in the hands could lead to a hand-related
injury such as carpal tunnel syndrome.  Id.

Our case, however, is more like Guevara,
where the Texas Supreme Court found lay evidence insufficient to support a
finding that an automobile accident caused a million dollars in medical
expenses.  Guevara, ___ S.W.3d at ___, 2007 Tex. LEXIS 795, 2007 WL
2457760, at *5.  The Court concluded that expert medical evidence is required
to prove causation unless competent evidence supports a finding that the
conditions in question, the causal relationship between the conditions and the
accident, and the necessity of the particular medical treatments for the
conditions are within the common knowledge and experience of laypersons.  Id. at ___, 2007 WL 2457760, at *2.  In Guevara, Ferrer’s father, Arturo, an
eighty-six-year-old man, suffered several heart and abdominal injuries after
being involved in a car accident.  Arguing against a motion for a directed
verdict, Ferrer argued that the evidence of the sequence of treatments following
the accident combined with lay testimony about the accident and Arturo's having
no abdominal problems or requiring a ventilator prior to the accident was
sufficient to establish a causal relationship.  The motion for directed verdict
was denied and the jury found damages of $1.1 million for Arturo’s medical
expenses.  On the defendant’s motion for judgment notwithstanding the verdict, the
trial court entered a take-nothing judgment as to Arturo.

The Court stated: 

 

Non-expert evidence of circumstances surrounding
the accident and Arturo's complaints is sufficient to allow a layperson of
common knowledge and experience to determine that Arturo's immediate
post-accident condition which resulted in his being transported to an
emergency room and examined in the emergency room were causally related to the
accident.  Thus, the evidence is legally sufficient to support a finding that some
of his medical expenses were causally related to the accident.  On the other
hand, the evidence is not legally sufficient to prove what the conditions were
that generated all the medical expenses or that the accident caused all of the
conditions and the expenses for their treatment.

 

Id. at ___, 2007 WL 2457760, at *20.

 

Applying Guevara here, expert testimony
would not be required to prove Larkins’s back injuries, but we do not think the
general experience of laypersons is adequate to evaluate the cause of her
psychological injuries without expert testimony.  A layperson’s evaluation of
Larkins’s medical records might lead to a belief that the reported symptoms
were caused by the head injury.  However, an expert evaluating the same records
might know that the head injury could not have caused the symptoms reported. 
In fact, many of the medical records conclude that Larkins’s behavioral changes
are not causally related to her assault.  Because we hold that expert testimony
was required to establish that Larkins’s depression, anxiety, and
post-traumatic stress disorder were causally related to her head injury and
therefore compensable, we next turn to whether her medical records satisfy the
expert testimony requirement.

Medical Records as Expert
Testimony 

Larkins also argues that the medical
records admitted into evidence constitute the necessary expert evidence.  It
appears that the direct question of whether medical records can be considered
expert testimony is yet to be answered.  The Houston First Court of Appeals
came close when it hypothesized that if the appellant has introduced only the
medical records, discharge summary, and other notes at trial, the appellant
would not have carried his burden of reliability in causation evidence under
the Daubert/Robinson/Jordan burden.  Coastal Tankships, U.S.A., Inc. v. Anderson, 87 S.W.3d 591, 611 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Justice Brister’s concurring opinion asserts
several reasons why medical records and reports should not be considered expert
testimony.  Id. at 618 (Brister, J. concurring).  He notes that
documents cannot replace expert testimony for several reasons.  First,
documents are not under oath.  Id.  Second, allowing documents to serve as
expert testimony allows factfinders to reach the wrong conclusion by picking
and choosing parts of the document and using them out of context.  Id.  Third, the wisdom of the rules of evidence does not allow documents in place of
expert testimony because the rules bar the admission of “learned treatises” in
place of expert testimony.  Id.; Tex.
R. Evid. 803(18) (providing statement from learned document may be read
into evidence—though not received as an exhibit—if an expert is present to
verify its reliability and explain what it means).  However, the majority and
Justice Brister conceded that if medical records can meet the requirements for
reliability used to assess expert testimony, then a plaintiff can rely on his medical
records to fulfill his expert testimony requirement.  Id. at 610, 617. 
Expert causation evidence must rest in reasonable medical probability, and
reasonable probability can be determined by a document’s context and substance
without a testifying expert.  Crye, 907 S.W.2d at 500.

Assuming, as we do, that Larkins’s medical records
can be considered expert testimony, her medical records do not establish
causation within reasonable medical probability.  Larkins saw several doctors
who gave varying diagnoses.  Several of those medical records were admitted as
evidence.  If medical records are to be considered expert testimony, they must be
evaluated applying the same principles used to evaluate the opinion of an expert. 
Coastal, 87 S.W.3d at 610.

We review an expert's testimony in its entirety
and will not accept the expert's opinion as some evidence merely because the
expert used "magic words."  Havner, 953 S.W.2d at 711.  In the
medical context, expert testimony that is not based on reasonable medical
probability, but relies instead on possibility, speculation, or surmise, does
not assist the jury and cannot support a judgment.  See id. at 712.  The following non-exclusive factors may be considered in
determining reliability: (1) the extent to which the expert's theory has been
or can be tested; (2) the extent to which the expert's technique relies upon
his own subjective interpretation; (3) whether the expert's theory has been
subjected to peer review and publication; (4) the potential rate of error of
the theory; (5) whether the expert's theory or technique has been generally
accepted as valid by the relevant scientific community; and (6) the
non-judicial uses that have been made of the expert's theory or technique.  See
E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 557 (Tex. 1995).

Dr. Nixon, a psychologist and Dr. Cernosek, a
chiropractor, are the only health care providers to associate Larkins’s mental
disorders with her on-the-job injury.  Dr. Nixon diagnosed post-concussion
syndrome, dementia due to head trauma, mood disorder due to head injury, major
depressive disorder (single episode reactive) and post-traumatic stress
disorder, but he does not explain how the head injury could and did cause these
psychiatric disorders.  Further, Dr. Nixon’s diagnosis appears to be largely
based on Larkins’s husband’s version of her medical history.  There is nothing
in Dr. Nixon’s report to indicate that he has the expertise to render an
opinion on mental or psychiatric disorders caused by head injuries.  The
statements in Dr. Nixon’s report do not rise to the level of reasonable medical
probability.  See Crye, 907 S.W.2d at 499-500.

Dr. Cernosek, a chiropractor, diagnosed three
conditions that he opined, “within medical probability,” are directly related
to Larkin’s work injury: Displacement of lumbar intervertebral disc without
myelopathy, myofascial pain syndrome, and muscular deconditioning syndrome.  In
that same report, Dr. Cernosek mentions “the psychosocial dysfunction
associated with her on the job injury,” “the psychosocial component of her
injury,” and “the psychosocial component and the changes that have happened due
to the closed head injury.”  That is the extent of Dr. Cernosek’s opinion on
Larkins’s psychiatric disorders.  At no time does Dr. Cernosek identify the
head injury, say who diagnosed the head injury, state how such a head injury
could lead to “psychosocial changes,” or how he has the expertise that would
allow him to render an expert opinion on neuropsychiatry.  Travelers Ins.
Co. v. Wilson, 28 S.W.3d 42, 48 (Tex. App.—Texarkana 2000, no pet.).  Dr.
Cernosek’s statements are conclusory at best, and his opinions do not rest upon
reasonable medical probability.  Further, Dr. Cernosek is a licensed
chiropractor.  Not every medical doctor can qualify as an expert in every given
case.  Id.  For Dr. Cernosek’s opinions to be considered expert
testimony, Larkins would have to show that Dr. Cernosek had medical expertise
regarding psychological disorders caused by head injuries.

The TWCC-designated physician, Dr. Robinson,
determined that the psychiatric disorders are not compensable and gave Larkins
a 0% impairment rating for her back pain.  TWCC then requested a “psychological
evaluation and impairment rating for the psychological condition.”  The
psychiatrist, Dr. Polatin, licensed in psychiatry, provided this examination to
assist Dr. Robinson.  Dr. Polatin was specifically asked to give an impairment
rating for the psychiatric conditions that Larkins was exhibiting.  Dr.
Polatin’s report provides no link to Larkins’s head injury.  He does not
identify the nature of the head injury or how the head injury caused the
psychiatric disorders in this case.  Because Dr. Polatin does not mention the head
injury suffered by Larkins, his opinion cannot rise to the level of expert
testimony required to determine causation.

Because the medical records here do not provide
sufficient expert evidence on causation, the trial court’s finding that
Larkins’s depression, anxiety, and post-traumatic stress disorder were
compensable was legally insufficient.  We sustain issue one.

Because our resolution of SORM’s legal
insufficiency complaint is dispositive of this appeal, we do not address SORM’s
remaining issue.  Tex. R. App. P.
47.1.  However, in the interest of justice, we will remand the case for another
trial.  Tex. R. App. P. 43.3(b); Wilson
v. Texas Parks & Wildlife Dep't, 8 S.W.3d 634, 635 (Tex. 1999).

Conclusion 

We reverse the trial court's judgment and remand
the cause for a new trial.

 

BILL VANCE

Justice

 

Before Chief Justice
Gray,

            Justice
Vance, and

            Justice Reyna

            (Chief Justice Gray concurs in the judgment but not
the opinion of the Court.  A separate opinion will not issue.  He notes,
however, that because the 70% impairment rating is not supported by legally
sufficient evidence, that the only proper impairment rating the trial court
could have found was either 5% or 0%, which is the impairment rating as
certified by the other three doctors that examined Larkins (two doctors found
5% impairment, one doctor found 0% impairment).  Because the evidence at the
original trial, and now at the trial on remand, is limited to the evidence that
was presented to the commission, new doctors and different impairment ratings
cannot be presented, nor can new or additional evidence of causation be
presented.  But because we do not know which of the alternative impairment
ratings the trial court would have chosen at the first trial if he had known
that consideration of the condition that resulted in the 70% impairment rating
was not an option, we must remand the proceeding for a new trial so that the
trial court may make that determination.  See generally, City
of Waco v. Kelley, 226 S.W.3d 672, 682-687 (Tex. App.—Waco 2007, pet.
granted)(Gray, C.J., dissenting) (Upon determining that the hearing examiner
imposed an improper punishment, an appellate court has no authority to
determine what the proper punishment should be.).  SORM prays that we remand
with instructions that the trial court enter a judgment on remand of an
impairment rating of either 5% or 0%.  Precisely because these are the only
options on remand, I believe the instruction is not necessary.  Thus I agree
that the judgment must be reversed and remanded, but I do not agree that it is
being remanded under the authority of Rule 43.3(b).  Tex. R. App. P. 43.3(b).  If we ever properly use Rule
43.3(b) to remand a proceeding for a new trial in the interest of justice
rather than reversing and rendering judgment, we should expressly state the
unusual circumstances that justify the use of such a procedure.  Because we
have no choice but to remand in this circumstance, no detailed explanation of
what constitutes the necessity for a new trial in the interest of justice is
necessary.)

Reversed and remanded 

Opinion delivered and
filed May 21, 2008

[CV06]









[1] The State is
self-insured through the
State Office of Risk Management with respect to its employees' compensable
injuries.  Tex. Lab. Code  Ann. §§ 412.011, 412.0122 (Vernon 2006).